Hovey *v.* Chase.

---

EDWIN S. HOVEY *versus* WILLIAM CHASE.

The Act of March 17, 1862, in relation to the use of office copies of deeds, does not repeal the twenty-sixth rule of Court, but enlarges its operation.

When such copy is admissible in the case, no exception lies to its admission at any particular time.

Exceptions to the exclusion of interrogatories in a deposition, will not be sustained, when it appears that the same questions, with their answers, have been admitted in another part of the deposition; nor when the deponent answers that he cannot tell positively, but *presumes* that a particular state of facts exists.

On the trial of an issue, whether the grantor in a deed was of sound mind at the time of its execution, neither the judgment of the Court setting aside his will, nor the record of the appointment of a guardian made nearly a year after the date of the deed, is admissible.

If the facts assumed in a hypothetical question, propounded to an expert, are

not themselves proved substantially, the answer to such question is not to be considered by the jury.

A man may not have sufficient intelligence and understanding to manage his affairs and transact business *in a proper and prudent manner*, and yet may not be *non compos mentis.*

The law fixes no particular standard of intelligence necessary to be possessed by parties in making a contract.

Legal competency in a party to a contract is the possession of mental capacity sufficient to transact business *with intelligence* and an *intelligent* understanding of what he is doing.

Instructions to the jury upon questions not passed upon by them in rendering their verdict, are no cause for setting it aside, even if they were erroneous.

Of setting aside a verdict as being against the evidence.

On Exceptions to the rulings of Cutting, J., and on Motion to set aside the verdict.

Real Action. Both parties claimed under Stephen Neal. The plaintiff alleged that the conveyance from Neal, under which the tenant claimed was invalid, because Neal, at the time of making it, was *non compos mentis.*

The tenant offered an office copy of this deed in evidence, and it was admitted by the presiding Judge, against the demandant's objection.

The demandant offered the judgment of the Supreme Court, setting aside the will of said Neal, but it was excluded; also, the record of the appointment of a guardian of said Neal, as being *non compos*, made about a year after the date of the deed, but it was excluded.

The testimony was very voluminous, but it is sufficiently stated in the opinion, so far as it affects the questions of law decided.

The demandant requested certain instructions which the presiding Judge declined giving, except so far as they were contained in those given. The requested instructions are stated in the opinion sufficiently to show the questions of law raised.

The presiding Judge gave the following instructions.

" The demandant claims a certain lot of land in this city, and traces his title from Stephen Neal, through Mrs. Den-

nett, sole heiress of said Neal, by deed from her. Under modern legislation, the plaintiff had a right to make the purchase of Mrs. Dennett and she had a right to sell to him.

"The defendant also claims to derive his title from Stephen Neal. So both claim under the same owner. And the question is, what is the effect of a certain deed from Stephen Neal to Samuel E. Crocker, dated July 27, 1835. If that was a valid deed, then the estate did not descend to Mrs. Dennett, and she had no title to convey to the plaintiff. So it becomes necessary for the plaintiff to impeach that deed, and the burden is on him. If he has done it successfully, then he is entitled to recover.

"There must be two minds, two intelligences, to make a valid contract or conveyance. Whether Stephen Neal had such a mind is a mixed question of law and fact. Courts cannot weigh in scales, more than they can the everlasting hills, what is the amount of intelligence necessary to make a contract. The law can fix no particular standard of intelligence necessary to make a contract. The rule I give you is this:—The grantor must be of sound mind, and have legal competency. No degree of physical or mental imbecility can avoid his deed if he had legal competency. Legal competency to act, is the possession of mental capacity sufficient to transact business with intelligence, and an intelligent understanding of what he was doing.

"Had he such capacity on the 27th day of July, 1835? The presumption is, that all have it. As to minors, that is an arbitrary rule which protects them.

"The plaintiff has introduced the record of the Probate Court to show that, in April, 1834, Stephen Neal was put under guardianship, which transferred all his rights and control over his property to his guardian. If the case had stopped here the deed would not be operative for two reasons, one is his incompetency, disclosed in the record, and one is that the legal control of his property is taken away.

"But, on the first Tuesday of Sept., 1834, the guardianship was removed for causes disclosed in the record of re-

Hovey *v.* Chase.

moval.  That restored him to his legal rights as fully as they were before he was put under guardianship.  The plaintiff cannot impeach that record.

The deed to Crocker was made in the subsequent July, some months afterwards.  Now, the question is, what was the condition of his mind at the time of the date of this conveyance.  The law determines that to be the time the situation of his mind must be ascertained.  Here they have gone before and afterwards.  Considerable latitude has been given.  Therefore you will bear in mind the dates of all the incidents brought up, to show whether he had legal capacity to make the conveyance on the 27th of July, 1835.

" That brings you to the mass of testimony on both sides. It is for you to decide.  The burden is upon the plaintiff to show that Neal had not legal capacity.  If he fails to show you that Neal had not legal capacity, he fails in his case.  I shall not repeat the evidence, nor give you any intimation in regard to its effect.  It has been fully commented on by counsel on both sides.

" I shall only refer to the experts.  You have heard a long interrogatory read to both of these experts, and they unhesitatingly state that, if all these facts are true, said Neal was laboring under *senile dementia,* or insanity.  It is for you to say whether those facts are true or not.  If you are satisfied they are not true, then their opinion as experts goes for nothing.  Suppose the defendant had read a question to the experts embracing what his witnesses had testified to, their opinion might have been that he was of sound mind. So you will perceive, if the question had not been asked until after the testimony for the defence had been given, they might not have answered it as they did.

" If their opinion had been asked after the evidence was all in on both sides, so that it could have been based upon all the testimony in the case, it might have been different. The plaintiff must satisfy you that the facts in his hypothetical questions are substantially true, to entitle their opinion to much weight.

"If you find that Stephen Neal had legal capacity to act, as to which I have already instructed you, still, if advantage is taken of his weakness to obtain from him a deed which is unfavorable, by misrepresentation, imposition or undue influence, such contract cannot be upheld."

Instructions were given upon other points, but they did not become material.

The verdict was for the tenant and the demandant excepted.

*Albert Merrill*, for the plaintiff.

1. The copy of deed from Neal to Crocker was improperly admitted. 1. Because the original deed itself would not have been admissible, without tenant's showing that he derived title under it. 2 Greenl. Ev., § 556, and note 6; *Shapleigh* v. *Pillsbury*, 1 Maine, 290; *Stanley* v. *Perley*, 5 Maine, 372; *Walcott* v. *Knight*, 6 Mass., 490; *Mechanics' Bank* v. *Williams*, 17 Pick., 441. 2. Because the copy was not admissible under the statute of March 17, 1862.

2. The final judgment and decree of the Supreme Court of Probate, setting aside the will of Stephen Neal, was improperly excluded. 1 Greenl. Ev., §§ 510, 511, 522, 523, 524, 525, 538, 539; *Dublin* v. *Chadburn*, 16 Mass., 433; *Laughton* v. *Atkins*, 1 Pick., 535; *Queen* v. *Newman*, Law Reporter for August, 1852, p. 231.

3. The record of the second guardianship was improperly excluded. *Tuttle* v. *Gates*, 24 Maine, 397.

4. The 12th and 16th interrogatories and answers in the deposition of Ira Bradford were improperly excluded. *DeWitt* v. *Baily & al.*, 17 N. Y. Ct. Appls., 345; *Gibson* v. *Gibson*, 9 Yerg., 329; *Baxter* v. *Abbott*, 7 Gray, 72; *Commonwealth* v. *Rich*, 14 Gray, 335.

5. The question to Steele, as to Mrs. Dennett's request to have the Crocker mortgage increased, was clearly illegal and should have been excluded.

6. The charge in relation to the testimony of the experts was erroneous. *Hastings* v. *Bangor House Prop.*, 18 Maine,

430; *Peirce* v. *Whitney*, 22 Maine, 113; *Woodbury* v. *Obeir*, 7 Gray, 467; *Commonwealth* v. *Rogers*, 7 Met., 404–405; *The People* v. *Lake*, 2. Kern., 362.

7. The presiding Judge's definition of a sound mind, or what constitutes legal competency, was erroneous. He did not give the true rule of law, to guide the jury in deciding a mixed question of law and fact. *Chase & al.* v. *Breed*, 5 Gray, 444; Kent's Com., (vol. 2,) 452; Black.'s Com., (vol. 1,) 304; *Ridgeway* v. *Darwin*, 8 Ves., jr., 66; *Ex parte Cranmer*, 12 Ves., jr., 454; The matter of *Barker*, 2 Johns. N. Y. Ch. R., 236; *Jackson* v. *King*, 4 Cow., 218; *DeWitt* v. *Baily & al.*, (cited above); *Gibson* v. *Soper*, 6 Gray, 282.

The Judge only gave the degree of intelligence required to make a will which is lower than that required to make a deed. *Henison* v. *Bowen*, 3 Wash., C. C. R., 580; *Stevens* v. *Van Cleve*, 4 Ib., 262; *Kinne* v. *Kinne*, 9 Conn., 102; *Steward* v. *Lispenard*, 26 Wend., 306; *Lowe* v. *Williamson*, 1 Green. N. Y. Ch. R., 82; *Wilmark* v. *Stryker*, 1 Ib., 9; *Watson* v. *Watson*, 2 B. Munroe, 74; *Reed's will*, (Ib.,) 79; *Van Alst* v. *Hunter*, 5 Johns. Ch. R., 158; 1 Jar. on Wills, 29, note; *Stone* v. *Damon*, 12 Mass., 480; *Leonard* v. *Leonard*, 14 Pick., 280; *Breed* v. *Pratt*, 18 Pick., 115; *Gilmore* v. *McNeal*, 45 Maine, 599.

8. First, third, fourth, fifth and sixth instructions requested were improperly withheld, and the instructions instead thereof upon the effect of the proceedings before the Probate Court were erroneous. *Waite* v. *Maxwell*, 5 Pick., 217; 1 Greenl. Ev., §§ 525 and 550; 2 Smith's Leading Cases, 440; *Lord* v. *Chadburn*, 42 Maine, 443; *Baxter* v. *N. E. Mutual Ins. Co.*, 6 Mass., 277; *Dublin* v. *Chadburn*, 42 Maine, 443; *Laughton* v. *Atkins*, 1 Pick., 535; *Littlefield* v. *Cudworth*, 15 Pick., 24; *Loring* v. *Steineman*, 1 Met., 208; *McDonnald* v. *Morton*, 1 Mass., 543; *Leonard* v. *Leonard*, 14 Pick., 280; *State* v. *Richardson*, 6 Foster, (N. H.,) 241; *Kimball* v. *Fish*, 39 N. H., 117; *Wardsworth* v. *Sharpstein*, 4 Seldon, 388; *Hix* v. *Whit-*

*more*, 4 Met., 545; Collinson on Lunacy, 55; 1 Greenl. Ev., § 42; 2 Ib., § 37; Shelford on Lunatics, 275; *Chase* v. *Hathaway*, 14 Mass., 224; Statutes, 1821, c. 51, §§ 3, 5 and 49; *Howard, Pet'r*, 31 Maine, 552; *Smith* v. *Rice*, 11 Mass., 512; *Hathaway* v. *Clark*, 5 Pick., 490; *Whitman* v. *Watson*, 16 Maine, 463; *Harris* v. *Sturdivant*, 29 Maine, 367; *Vose* v. *Morton*, 4 Cush., 31; *Marlow* v. *Hynde*, 12 Wheat., 193; *Hall* v. *Williams*, 10 Maine, 290; *Limeric, Pet'rs*, 18 Maine, 186; *Woodman* v. *Somerset*, 37 Maine, 37; *Peters* v. *Peters*, 8 Cush., 543; 4 Kent's Com., 309, and note *a*; *Webster* v. *Cooper*, 14 How. U. S. R., 488; *Nowell* v. *Nowell*, 8 Maine, 220; *Morton* v. *Burnett*, 22 Maine, 257; *Conkey* v. *Kingman*, 24 Pick., 115.

9. The record of removal of the guardian should have been excluded, because it was void for want of jurisdiction of the subject matter, and of all parties in interest to the proceedings; and, if not void or voidable, it was admissible only to show that the legal disability of the guardianship was removed, and not to prove the facts recited in it, viz., a restoration of mental competency. *Stone* v. *Damon*, 12 Mass., 489; Statutes, 1821, §§ 2 and 68 of c. 51, § 2 of c. 52; *Penniman* v. *French*, 2 Mass., 140; *Boynton* v. *Dyer*, 14 Pick., 3; *Deering* v. *Adams*, 34 Maine, 41; *Lunt* v. *Auburn*, 39 Maine, 392; *Allis* v. *Morton*, 4 Gray, 64.; Art. 1, § 20, Cons. of Maine; *Abbott* v. *Wood*, 22 Maine, 548; *Harlow* v. *Pike*, 3 Maine, 439; *Lutz* v. *Linthicum*, 8 Pet., 179; *Thayer* v. *Putnam*, 12 Mass., 279; *Shields* v. *Barrows*, 17 How. S. C. R., 141; *Lewis* v. *Darling*, 16 Ib., 8 and 9; *Waterville Iron Man. Co.* v. *Goodwin*, 43 Maine, 432; *Granite Bank* v. *Treat*, 18 Maine, 342; *Jenks* v. *Howland*, 3 Gray, 538; *Hathaway* v. *Clark*, 5 Pick., 491.

Other points were argued which do not become material in the view of the case taken by the Court.

*Rand* and *H. P. Deane*, for the defendants.

The opinion of the Court was drawn by

APPLETON, C. J.—It is in proof that Stephen Neal,

from whom both parties derive their title, was decreed to be *non compos* and incapable of managing his own affairs, and was placed under guardianship by the Judge of Probate for this county, at a Court holden by him on the third Tuesday of April, 1834.

The disability thus imposed was removed by the same Judge, at a Court holden by him on the first Tuesday of the following September, on the ground that his intellect was so far restored that he was capable of managing his own affairs.

Upon the death of Stephen Neal, in 1836, his estate, real and personal, descended to Lydia Dennett, his sole heir, by whom the demanded premises were conveyed to the demandant by deed dated July 15, 1858.

The tenant has the elder title. On July 27, 1835, Stephen Neal conveyed the land in controversy to Samuel E. Crocker, from whom, by various mesne conveyances, the title passed to the tenant. The validity of this deed from Neal to Crocker was contested on the ground that the grantor was not of sound mind at the time of its execution.

A verdict was rendered by the jury affirming the validity of the deed in question, and the case is now before us on exceptions to the rulings or refusals to rule of the presiding Justice, and upon a motion for a new trial. The questions presented have been argued very elaborately and with great ability.

(1.) The copy of the deed from Stephen Neal to Samuel E. Crocker, dated July 17, 1835, was admissible under the 26th rule of this Court. 37 Maine, 576.

The design of the statute of March 17, 1862, c. 112, was to extend the use of office copies to all cases, whether touching the realty or not, "where the original deeds would be admissible" and "neither the party offering such office copy, nor the party opposing, is a party to the deed, or claims as heir, or justifies as servant of the grantee or his heirs." The deed was properly received, as neither party is within any of these exceptions.

The evidence is all reported. It shows that the only title of the tenant was derived from and under this deed. It was entirely immaterial whether the deeds by which the title was conveyed to the tenant, were introduced then or at a subsequent time — and this is abundantly apparent. The plaintiff, therefore, could in no way have been injured by the admission of the deed at the particular time it was received.

(2.) The final judgment and decree of the Supreme Court of Probate, setting aside the will of Stephen Neal, dated Oct. 19, 1835, was rightfully excluded. It was rendered months subsequent to the deed to Crocker. The tenant was neither party nor privy to that judgment. Neither party claimed through nor under the will of Neal. The tenant could not avail himself of the will to negative the demandant's rights, because it had never received probate. He was a stranger to all these proceedings. "It is also a most obvious principle of justice that no man ought to be bound by proceedings to which he was a stranger." 1 Greenl. Ev., § 522.

(3.) The record, showing the appointment of a guardian to Stephen Neal, in June, 1836, was clearly inadmissible. Whether he was then sane or insane could not affect the tenant's title. Neither party claimed under these proceedings. They were long subsequent to the conveyance from Neal to Crocker. They were res inter alios — as to all which the tenant was a stranger and not to be affected thereby.

(4.) The plaintiff can in no way have suffered from the exclusion of the 12th and 16th interrogatories and answers in the deposition of Bradford. The answers are to the effect that he (Neal) did not appear to know how to make change.

But, substantially, the same interrogatory was proposed when the direct examination was resumed, and this interrogatory and the answer thereto were received.

Assuming, therefore, the evidence admissible, which may be regarded as a matter of grave doubt, still the facts at-

tempted to be proved by the excluded questions and answers, are established as far as the witness could do it. To the inquiry "whether, when you gave him back change he counted it or paid any attention to the amount you gave him?" the witness answered, "I could not remember. He might sometimes or might not."

To the other interrogatory proposed and excluded, the witness answers, that he cannot tell, but *presumes* the fact may be as is assumed in the interrogatory. But the presumptions of a witness, as to the existence or non-existence of facts, are not admissible as evidence. Besides, the fact inquired about, is impliedly proved by the evidence admitted without objection.

(5.) The remark of Mrs. Dennett, as to the amount for which the mortgage was to be given, was immaterial to the issue. The question at issue was the sanity of Stephen Neal. The casual remark of the wife, as to the mortgage, whether it should be given for more or less, was entirely irrelevant, so far as relates to that inquiry.

(6.) In reference to the experts, the presiding Judge uses the following language. "You have heard a long interrogatory read to both of these experts, and they unhesitatingly state that, if all the facts were true, said Neal was laboring under *senile dementia*, or insanity. It is for you to say whether these facts are true or not. If you are satisfied they are not true, then their opinion goes for nothing." To these remarks no exception can reasonably be taken. It is obvious enough, that the assumed facts upon which the opinion of the experts is based, must be established — for it is only to the extent of the facts proved, that there is any basis upon which their judgment can rest. If none of the facts assumed are proved, then there could be no foundation for their opinion.

The Judge further added, — "suppose the defendant had read a question to the experts embracing what his witnesses had testified to, their opinion might have been that he was of sound mind. So you will perceive, if the question had

not been asked until after the testimony of the defence had been given, they might not have answered it as they did. If their opinion had been asked after the evidence was all in on both sides, so that it could have been based upon all the testimony in the case, it might have been different." These suggestions involve no question nor rule of law. They give no rule for the guidance of the jury as matter of law. They embrace no error of law or mistake of fact. They are suppositions merely, of the correctness of which the Judge gives no opinion. The jury could not know to what extent the introduction of new elements for their consideration might change or modify the judgment of the experts, and the Judge so remarked.

The concluding remark, that " the plaintiff must satisfy them that the facts in his hypothetical questions are substantially true, to entitle their opinion to much weight," was unobjectionable. If not substantially true, upon what would their opinion be formed? The facts not proved but assumed in the interrogatory and by the experts, as existing, might be those deemed by those experts as of controlling importance.

(7.) The counsel for the demandant requested the presiding Judge to instruct the jury, 1st," to find and decide the fact whether, on the day of the execution of Stephen Neal's deed to Samuel E. Crocker, said Neal was *non compos mentis*, or of unsound mind, which terms and phrases mean the same thing, viz., that he had not sufficient intelligence and understanding to manage his affairs and *transact business in a proper and provident manner*,"—and, 2d, that "this is the fact you are to decide and find, viz., whether he had sufficient intelligence and understanding to *transact business* in a *proper* and *provident manner*, for, if he had not, he was of unsound mind, and said deed to Crocker was *void*, and the plaintiff is entitled to recover."

The substance of this request is, that every man who fails to manage his affairs " in a *proper* and *provident* manner," " is *non compos mentis*, or of unsound mind." Many sane

men, some of transcendent ability but of speculative tendencies, manage their affairs neither in a proper nor a prudent manner. The definition of a *non compos*, proposed, has, at any rate, the merit of originality. It varies in most important essentials from the law, as laid down by the jurists, to whose decision the counsel for the·plaintiff has referred us. " We find," remarks Mr. Senator VERPLANK, in *Steward* v. *Lispenard*, 26 Wend., 255, " that, from Fitzherbert to Blackstone, the phrase *non compos mentis* is used by the greatest authorities of the common law as synonymous with that of *non sane* mind and memory — the unsound mind of modern phraseology and our own statute books. But the same line of unvarying authorities shows that, in legal intent, the natural defect of mind, thus absolutely shutting persons from the ordinary rights of society, does not consist in a limited degree of intelligence, but in the entire absence of what, in the philosophy of olden times, was termed " discourse of reason." The idiot was one, according to Fitzherbert, " who has not any use of reason, has no understanding to tell his age, who is his father or mother, what shall be his profit or loss." F. N. B., 233 ; Comyn's Dig., Tit. Idiot. And the same old rigid rule is repeated two centuries afterwards, by Blackstone ; — " A man is not an idiot if he hath any *glimmering of reason*, so that he can tell his parents, his age, or the like common matters." 1 Black. Com., 304. In the same understanding of language Lord HARDWICK, in *ex parte Barnsby*, 3 Atk., 167, says, "*non compos mentis*, or since the proceedings have been in English, of *unsound mind*, (which means the same thing,) are legal terms of a definite signification, understood by courts of law, importing *not weakness of understanding* but a total deprivation of reason." Men may be sane, who are neither sagacious nor successful, and who transact their business in an improper and improvident manner.

The authorities cited by the counsel for the plaintiff are to the effect that the deed of an insane man is voidable and not *void*. The insane man, when restored to his right mind,

may affirm the contract he made when insane. *Allis* v. *Billing*, 6 Met., 415; *Arnold* v. *Richmond Iron Works*, 1 Gray, 434; *Gibson* v. *Soper*, 6 Gray, 282.

These requested instructions were properly withheld.

(8.) The counsel complain of the following remarks of the presiding Judge;—"Courts of law cannot weigh in scales, more than they can the everlasting hills, what is the amount of intelligence necessary to make a contract. The law can fix no particular standard of intelligence necessary to make a contract." It is not the business of the Court to weigh the intellectual capacities of parties to contracts to determine whether they are of unsound mind or not. That is the province of the jury. These remarks mainly refer to the difficulty of fixing with precision the exact line where sanity ends and insanity begins—a difficulty sufficiently apparent to all, and fully appreciated by the Court in the cases to which we have been referred. "The common law," remarks WOODWORTH, J., in *Jackson* v. *King*, 4 Cow., 218, "seems not to have drawn any discriminating line by which to determine how great must be the imbecility of mind to render a contract void, or how much intellect must remain to uphold it. The difficulty of making such discrimination is apparent."

But these remarks were not given nor do they purport to be given as a rule of law. That is specifically given in what follows.

(9.) The instruction as to the degree of intelligence necessary to render the deed valid was in these words:— "The rule I give you is this, the grantor must be of sound mind and have legal competency. No degree of physical or mental imbecility can avoid his deed if he have legal competency. Legal competency to act is the possession of mental capacity sufficient to transact business *with intelligence* and *an intelligent* understanding of what he was doing."

"Lord COKE defines *non compos mentis* "to be, a person who was of good and sound memory, and by the visitation of God had lost it," or "he that by sickness, grief or other

accident, *wholly* loseth his understanding." *Beverly's case,* 4 Coke, 123 ; Co. Lit., 247, a. The deeds of all such persons are void; for, the terms "*non compos*," of unsound mind, are legal terms and import a total deprivation of sense," observes WOODWORTH, J., in *Jackson* v. *King.* But one, who can " transact business with intelligence and an intelligent understanding of what he was doing," can hardly be deemed of unsound mind.

In a case of alleged insanity, it was held that, to prove a person sane, it was not necessary that he should be shown competent to "manage his business with judgment and discernment," but that it was sufficient to show that he " knew what he was about." *Moffitt* v. *Witherspoon,* 10 Iredell, 185. " We," remarks NASH, J., in delivering the opinion of the Court, "do not agree with his Honor in his declarations to the jury, upon the mental capacity of Ann Donahoe, as to the rule by which they were to ascertain the fact. He charged, that Ann Donahoe was deemed in law capable of making a contract, until the contrary was proved. This is correct, so far as this case is concerned." He then proceeds, in judging of the sufficiency of her intellect, " it was not sufficient, that she should be able, merely, to answer familiar questions, but to manage her business, with judgment and discernment." We do not consider the rule so laid down to be correct. If all persons are to be judged incapable of making contracts, who do not manage their business with judgment and discernment, " we apprehend there are many more disqualified by law than are now considered so. We know no better rule upon this subject, than that laid down by Lord COKE, that the person must be able to understand what he is about. To the same effect is the language of Chief Justice TAYLOR, in the case of *Armstrong and Arrington against Short,* 1 Harr., 11."

(10.) The instructions as to the effect of the Probate proceeding were in accordance with the law as set forth in *Hovey* v. *Harmon,* 49 Maine, 269. Stephen Neal, while under guardianship, was incapacitated from contracting.

After the decree by which he was relieved from guardianship, his contracts would be valid so long as he was of sound mind.

(11.) It is needless to examine the various instructions given, or requested to be given, in relation to the law of disseizin and adverse possession—because the presiding Judge peremptorily instructed the jury that, if the plaintiff had successfully impeached the deed from Neal to Crocker, "he was entitled to recover." The instruction referred to required a verdict at the hands of the jury if this deed was impeached. More the plaintiff could not ask. Assume all the requested instructions of the plaintiff to have been correct, he could not have been harmed by the omission to give them for the obvious reason that the instruction given was more favorable to him than the ones requested. It was equivalent to a peremptory ruling that no title was acquired by adverse possession—thus superseding all necessity of considering that question.

As the verdict of the jury was for the tenant, they must have found the deed from Neal to Crocker valid, and that his title passed thereby to Crocker. If so, no question of betterments could arise for the tenant was seized of the fee.

The plaintiff could not have been benefitted if the requested instructions had been given, nor was he harmed by those given, whether erroneous or not, for the contingency of their materiality did not arise.

(12.) The plaintiff claims that the deed of Neal to Crocker was void by reason of the mental imbecility of the grantor at the time of its execution, and that, having acquired the title of his heir, that he can avoid it—and that the verdict of the jury affirming the deed should be set aside as against evidence.

The land in controversy was sold to Crocker for $4000 in 1835, and he and his grantees have ever since remained in possession of the same. The evidence introduced tends to show that the price was a reasonable one at the time. Indeed, had it not been for the great public improvements

made since, the erection of which probably never entered into the mind of either grantor or grantee, there can be little doubt that the price paid, and interest and taxes, could not have been realized from its sale. The bargain was made when speculation was rife. There is nothing indicating unfairness in the price — regard being had to the time when the sale was made. The estate of Neal has reaped the benefit of this sale. The proceeds are in the hands of the heir or they have been expended for the benefit of the estate. The price paid is retained. The estate thus sold is sought to be recovered from the possession of a *bona fide* purchaser without notice.

· It has been seen that the instructions given were correct. The evidence was conflicting. The presumption of law is in favor of sanity. The burthen was on the plaintiff to establish the fact of insanity. This he has failed to do to the satisfaction of that tribunal to which the law has assigned the duty of determining, amid controverted facts, which are true and which are false. The inquiry is not what our judgment would have been upon the proof. After a long, laborious and impartial trial, after seeing and hearing the witnesses and observing their appearance and manner, the jury have established the validity of the conveyance in controversy — and we find in the evidence no such proof of fraud, corruption, gross partiality or mistake as imperatively requires us to set aside the verdict as against evidence.

*Exceptions and motion overruled.*

*Judgment on the verdict.*

RICE, DAVIS, WALTON and DICKERSON, JJ., concurred.