Mrs. Mittie ANDERSON et al., Appellants,

v.

John Foster CLINGINGSMITH, Appellee.

No. 16439.

Court of Civil Appeals of Texas.

Fort Worth.

June 28, 1963.

Rehearing Denied July 19, 1963.

T. B. Coffield Bowie, Sewell & Forbis and James E. Forbis, Decatur, for appellants.

Joe H. Cleveland, Bowie, and Vincent Stine, Henrietta, for appellee.

MASSEY, Chief Justice.

We affirm the judgment of the trial court which declares the validity of a will, in a suit brought in contest thereof.

Mrs. Mittie Anderson, a widow, Mrs. Maud Hillard, a widow, A. A. (Mack) Harrington, and Mesdames Essie Howard, Agnes Prather, and Willie L. Swindler, who were joined by their husbands, filed written contest of the application to probate the will of J. P. Clingingsmith, deceased, in the County Court of Montague County, Texas. Said contestants are either sisters, or surviving children of deceased sisters of the testator.

Proponent of the will, upon whose application for probate the County Judge admitted same, was John Foster Clingingsmith, a surviving brother of the deceased, who was named as independent executor. He was also a beneficiary under the terms of the will, along with others, in particular one Max Rice, son of a surviving sister of the deceased.

The writing filed by proponent, claimed to be the will of the deceased, was alleged by the contestants to have been signed by the testator at a time when he lacked the mental capacity required by law for the making of a valid will, and at a time when the testator was not of sound mind. Contestants further alleged that when the instrument was signed, or caused to be signed, the testator was unduly influenced to sign the same by compulsion and arguments of, and in order to avoid the importunities and relentless pressure by, the proponent, Edith Rice, Max Rice, and Glen Wilson, or one or more of said persons.

There was a judgment in the County Court admitting the will to probate, and an appeal was taken therefrom to the District Court of Montague County, Texas. Contestants signed an appeal bond for that purpose, along with R. F. Griffith and Elmer Adkins as sureties.

In the District Court trial was before a jury. Following the return of a finding upon a single special issue, which found the testator to have been of sound mind at the time he executed the instrument purporting to be his will, judgment was entered admitting the same to probate. That the proponent was entitled to letters testamentary upon taking the oath as executor was also decreed.

A major complaint on the part of the contestants relates to the manner in which

the case was submitted to the jury. In this the complaint was not so much the special issue itself, but of the instruction the court gave to the jury as to the manner by which their finding in answer thereto should be returned. The sole special issue submitted, and court's instruction relative thereto, read as follows: "Do you find from a preponderance of the evidence that at the time of the execution of the instrument dated February 29, 1960, that Jim Clingingsmith was of sound mind? You will answer this Issue by stating that 'He was of sound mind,' or 'He was of unsound mind.'"

The answer returned by the jury was, "He was of sound mind." The term "sound mind" was defined in the charge, but the term "unsound mind" was not defined. "Sound mind" was defined as follows: "By the term 'sound mind' is meant that the person making the will must, at the time the will is executed, have sufficient mental ability to understand the business in which he is engaged, the effect of his acts in making the will, the capacity to know the objects of his bounty and their claims upon him, and the general nature and extent of his property."

It is observable from the form of the special issue set out above that the burden of proof was at least intended to be placed upon the proponent of the will. That it be so placed was proper in this case, the contest of the will having been so timely made that the burden was cast upon the proponent to sustain and uphold it.

In connection with the issue as submitted the question arisen on account of the court's instruction to the jury as to the manner by which the same was to be answered is different from that which was before the court in Nass v. Nass, 1949 (Tex.Civ.App., Galveston), 224 S.W.2d 280, affirmed at 149 Tex. 41, 228 S.W.2d 130. Therein "sound mind" was defined exactly as it was defined in this case, and the special issue inquired whether the testator "was of sound mind * * * at the time he signed said instrument * * * of date January 3, 1947,

and offered in evidence as his last will and testament?" The jury was instructed to answer the issue either by finding "He was of sound mind", or "He was not of sound mind". In the present case the jury was instructed to answer the issue we have set out either by finding "He was of sound mind", or "He was of unsound mind".

The complaint of the contestants is more readily understandable by hypothesizing the instruction to the jury as a direction that it answer the issue either by finding "He was of sound mind", or "He was a lunatic". Had such been the instruction we would have readily agreed with the contestants that it amounted to a comment on the evidence and a charge on the weight of the evidence. Contestants also contend that the instruction actually given operated to so diminish the burden of proof devolved upon the proponent that he was not obliged to sustain an affirmative answer returned by truly discharging his legal burden.

We must remember that the burden of proof was upon the proponent of the will. By the charge he was obliged to have submitted and obtain a favorable finding on an issue that the testator had "testamentary capacity" or was of "sound mind". This he did. It was wholly unnecessary that the trial court give any definition of "unsound mind" or to so instruct the jury that it might readily understand what would amount to a want of testamentary capacity, being necessary only to define "testamentary capacity" or "sound mind". We believe that it would have been better had the trial court instructed the jury to answer the issue submitted by a simple "yes" or "no" answer, or by the same instruction given the jury in the case of Nass v. Nass, supra. In view of the instruction given the jury in this case it would have been better to have given also a definition of the legal term "unsound mind", so that there would have been no danger that the jury or some member or members thereof would conceive that the alternative to a finding of "sound mind" would be to find the testator was a lunatic, given to idiocy, or anything kindred thereto.

However, we do not hold that what was done amounted to reversible error, or even error, particularly since there was no showing that any member of the jury did actually misunderstand the instruction of the court or that the manner of submission did in fact cause the jury to return an answer to the special issue contrary to the answer it would have otherwise returned. The term "unsound mind", used in its broad and common sense (as opposed to the legal meaning which may vary according to whether it is applicable to a will contest or some other character of proceeding in which mental capacity or derangement is at issue) includes every species of defectiveness and impairment of mind or memory, even though slight, and perhaps in a manner wholly unrelated and having nothing whatever to do with a question of whether it affected a testator's testamentary capacity. See Words and Phrases, "Unsound Mind"; Durham v. Smith, 1889, 120 Ind. 463, 22 N.E. 333; In re Eiker's Estate, 1942, 233 Iowa 315, 6 N.W.2d 318, 324.

When the term "sound mind" is used in connection with the right and power to make and execute wills in Texas its meaning is synonymous with a testator's "testamentary capacity", invariably dependent upon the showing as to whether such person understood and appreciated the consequences of executing the propounded script. Chambers v. Winn, 1939 (Tex.Civ. App., Fort Worth), 133 S.W.2d 279, reversed in 1941 on other grounds at 137 Tex. 444, 154 S.W.2d 454; Reiche v. Williams, 1944 (Tex.Civ.App., San Antonio), 183 S.W.2d 587, writ ref., w. m., at 143 Tex. 365, 185 S.W.2d 420; Trezevant v. Rains, 1892, (Sup.Ct.), 19 S.W. 567, 569, new opinion reversing lower courts and granting another trial at 85 Tex. 329, 23 S.W. 890.

Under the circumstances we believe we are required to assume that the jury did consider the term "unsound mind" in its broad and common sense, and that it did not infer from the instruction of the court that to find the testator to have been a person of "unsound mind" had any import of his idiocy, lunacy or the like. Result thereof defeats the contentions of the contestants. We overrule the points of error predicated thereon, and because the court refused to submit the question of "testamentary capacity", with requested instructions appertaining thereto.

We next consider the contestants' complaint that the special issue inquired in such a way as to assume the testator's "execution" of the instrument purporting to be his will and because the reference to such instrument was by way of merely the use of the date of such purported "execution". Contestants say that the issue as thus framed was not an ultimate issue upon which the rendition of a proper judgment depended. We overrule these contentions.

We initially note that the form of contestants' pleadings assume a questionable "execution" only in the event there was want of testamentary capacity and/or a want of undue influence in connection therewith. That the inquiry posed by the special issue amounted to the ultimate issue was the holding of Nass v. Nass, supra, where there was no question relative to "execution" apart from "signing" in a test of the validity of the will. The facts and circumstances, not controverted, concerning the events attendant to the signing of the instrument purporting to be the testator's last will, dated February 29, 1960, conclusively establish that there was an "execution" thereof according to requisites of law, unless as of that time testator did not have testamentary capacity. We cannot see where contestants would be justified in a contention that the issue could amount to a comment on the weight of the evidence, if we are correct in our holding previously discussed overruling their contentions relative to the court's instructions as to the form of answer to be returned to the special issue which was submitted.

Under the contestants' points of error, numbered 8 to 18, inclusive, complaint is made because of the court's admission of

evidence which contestants believe should have been excluded, and because of the exclusion of other evidence which they believe should have been admitted. In the examination of these types of points of error appellate courts are denied the right to reverse the judgments of trial courts unless they first find that error has been committed (which prior to our Rules of Civil Procedure would be presumed to have amounted to reversible error), and additionally find that such error amounted to such a denial of the rights of the losing party as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case, or probably prevented him from making a proper presentation of the case to the appellate courts. See T.R.C.P. 434 and 503. With such in mind we have examined the complaints made in the points of error.

We have concluded that as to each point no reversible error is presented. In most instances, if not all, there would be no error in the acceptance or exclusion of the evidence about which complaint is made, and we are convinced in any event that the jury was not thereby caused or induced to return a verdict other than that which it would have returned but for such exclusion or acceptance of evidence. Nothing occurred which hampered contestants in presentation of any point of error. We will not unduly lengthen this opinion by a discussion, except upon the matter of the court having admitted in evidence a certain prior purported will executed by the testator in 1958, which will was stated to have been revoked pursuant to the execution of the will as to which the contest is made.

This 1958 will gave one of the contestants even less than she was given under the will under contest. Mrs. Anderson had only received $500.00 under the earlier will, while under that filed for probate she received $2,000.00 in cash and a devise of certain real estate to the proponent was subjected to her right to use and occupy a residence thereon located so long as she desired. The later will also directed that she be maintained out of the residue of the estate as long as she lived. Furthermore, she was given a third interest in the minerals under a 318½ acre tract of land. There had been no substantial change in the amount or value of testator's property in the time interval between the making of the former and later will, hence, those taking under the later will received proportionately less than they would have received had it been the 1958 will which was offered for probate.

Contestants would have been disputing the validity of the 1958 will had that question been the issue in the trial court. They are frank to state that if they had been successful in their contest below, thus probably resulting in the tender of such earlier will for probate, they would have presented themselves in that proceeding as contestants. That this would be the case was likewise obvious to the trial court. Contestants will be happy only if the estate of the testator is to pass according to the Laws of Descent and Distribution of the State of Texas.

In view of the provisions of the 1958 will it was to the interest of the contestants that the jury not be apprised thereof. Such will was admitted into evidence over their objection. They believe that they were unduly prejudiced thereby and by reason of the argument that the attorney for the proponent of the will was able to make before the jury to the effect that if contestants were not to take under the will of February 29, 1960, then they would "take less" under the earlier will. While we are not prepared to say that the jury would have probably returned a verdict other than that it did return if it had not been informed of the existence and provisions of the earlier will, we can agree that such knowledge, coupled with the argument in behalf of the proponent that to uphold the will he sought to sustain would be to contestants' advantage rather than their detriment, counted heavily against them.

█ In this connection it is important to notice that contestants had alleged that the

making of the later will was the result of undue influence. There was no certainty that the court would conclude that the issue of undue influence was not in the case until the time arrived for preparation of the court's charge to the jury. Indeed, contestants at all times contended that the evidence made an issue thereon and still do, for one of the points of error advances the proposition that the trial court was in error in refusing to submit an issue on undue influence. We believe and hold, therefore, that the 1958 will was admissible in behalf of the proponent as tending to disprove the allegations of undue influence made by the contestants.

Furthermore, the 1958 will was admissible on the issue of mental capacity on the theory that it showed a prior state of mind relative to disposition of testator's property and a prior declaration demonstrative of his intent which had a relation to the issue to be resolved. Trezevant v. Rains, 1892, 85 Tex. 329, 23 S.W. 890; Brown v. Mitchell, 1895, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64; Burkett v. Slauson, 1952 (Tex.Civ.App., El Paso), 256 S.W.2d 179, writ dism. In the usual will case it is the contestant who desires to show the jury the contents of an earlier one if there was one. Here the contrary happens to be true.

■ If the 1958 will was admissible on the issue of testator's mental capacity to make the later will, it necessarily follows that the counsel for either party was entitled to argue in relation to it. In this instance it was the attorney for the proponent who saw the situation as one on which he could found persuasive argument. In making this argument he told the jury that if it "busted" the will offered for probate then "that would bring up the 1958 will", under which Mrs. Anderson would get less and the other beneficiaries correspondingly more. Contestants objected but were overruled. We agree with their contention that the argument informed the jury of the legal effect of their answer to the special issue in the charge, but we furthermore believe

that it would be a dull mind indeed that would not have known such without proponent's argument. Where the members of the jury necessarily are aware of the legal effect of an answer to a special issue they are informed of nothing additional when they are told. In such a case there is no reversible error.

Counsel argues that the very same vice exists in the argument made that the Supreme Court held to be reversible error in Howard v. Salmon, 1962, 163 Tex. —, 359 S.W.2d 882, contrary to the opinion of this court in 359 S.W.2d 120. We see no similarity for in that case the fact question to be resolved was whether there had been an agreement not to probate a valid will and there was no issue of testamentary capacity or undue influence. Here we have the issue of testamentary capacity, to which the argument would be germane.

■ Furthermore, we believe the argument was invited. Although undue influence was not an issue submitted to the jury, the attorney for the contestants had embarked upon an argument to the effect that proponent "had already manipulated two wills out of him. He had already dictated the terms of those two wills. But he hadn't gotten ahold of the property quite fast enough, * * *." At another point the attorney had argued that the will offered for probate was the result of testator's inability to withstand the entreaties of the proponent to make a will favorable to him.

■ As heretofore mentioned, the contestants claim that the trial court erred in refusing to submit an issue to the jury on undue influence. We have examined the state of the evidence and have concluded that the issue was not raised and that submission of such an issue was not justified. To have submitted the issue could have only been upon surmise and suspicion by reason of the obvious trust and confidence that the testator had for many years conferred upon the proponent and his nephew Max Rice, and by reason of his close association with these persons. Such proof does not war-

**640**

rant the submission of the issue of undue influence. We know of no case which holds that it does.

 Contestants found a point of error on the premise that the trial court should not have entered a judgment against Griffith and Adkins, the sureties on the bond executed upon taking an appeal from the County Court of Montague County into the District Court. We hold that the judgment of the trial court in such particular to have been correct and strictly in accord with the direction of T.R.C.P. 144, "Judgment on Cost Bond". By this Rule such a decree is authorized to be entered as part of the final judgment of the cause on an appeal taken from the lower court into the higher for a trial *de novo*.

Judgment is affirmed.