Kintner *v*. The State, *ex rel.* Ripperdan.

KINTNER *v.* THE STATE, EX REL. RIPPERDAN.

WITNESS.—*Credibility Left to Jury.*—Whether a witness is worthy of credit or not, is a question for the jury trying the cause, and it is error for the court to stop the cross-examination of the witness and say, in the presence of the jury, " I have serious doubts whether that witness ought not to be recognized to answer for perjury."

INSTRUCTION.—*Assuming Facts.*—In instructing a jury it is error for the court to assume the truth of matters which have not been proved, or of matters concerning which the testimony has been conflicting, and indicate the leaning of the court against one of the parties.

SAME.—*Bastardy.*—*Competency of Witness.*—In a prosecution for bastardy, where the prosecuting witness has testified to the particular time when she was impregnated, and has given reasons for her belief, it is not error to refuse to instruct the jury that if they believe that the prosecuting witness had connection with another man about the time the child was begotten, this would destroy her competency as a witness to prove that the defendant was the father of her child.

From the Harrison Circuit Court.

*S. K. Wolfe, S. M. Stockslager,* and *A. Stephens,* for appellant.

*W. S. Jones* and *W. N. Tracewell,* for appellee.

DOWNEY, C. J.—This was a prosecution for bastardy. On a trial by jury, the defendant was found to be the father of the child. He moved for a new trial. His motion was overruled, and judgment was rendered against him for the support of the child. The only error properly assigned is the overruling of the motion for a new trial.

We need not set out the evidence which was given on the trial. The paternity of the child rested between the defendant and Wesley Ripperdan, another young man, an uncle of the prosecuting witness. The question was by no means free from doubt, judging from the evidence in the record. It may be conceded that the case is such upon the evidence that this court would not reverse the judgment for the lack of evidence to justify the verdict of the jury, whichever way the case might have been decided. There are other points in the record, however, on which it is claimed that the judgment should be reversed.

One ground of the motion for a new trial was this: One John Decker was introduced, as a witness for the defendant, and testified that on a certain occasion, near the time when the child was begotten, according to the evidence of the relatrix, he saw the relatrix and Wesley Ripperdan in the

act of sexual intercourse. Afterward, this witness was recalled by the defendant, and again testified; and when the plaintiff's counsel was proceeding to cross-examine him in the presence and hearing of the jury, the court said to plaintiff's counsel, "You need not spend any further time with that witness;" and thereupon the plaintiff's counsel dismissed him from the stand. The court then, addressing the counsel, in the presence and hearing of the jury, said, "I have serious doubts whether that witness ought not to be recognized to answer for perjury." Counsel for the defendant said, "To that remark we except."

Irregularity in the proceedings of the court, jury, or prevailing party, or any order of court, or abuse of discretion, by which the party was prevented from having a fair trial, is good ground for a new trial. 2 G. & H. 211, sec. 352, first division. The action of the court is defended by the counsel for the appellee on the ground of the improbability of the testimony of the witness, arising out of the facts narrated by him, and his deportment on the stand. We do not think the action of the court can be sustained on that ground, or on any ground. The question whether the witness was worthy of credit or not was a question for the jury, and the defendant was entitled to have that question go to them without the remarks from the court disparaging or destroying the force to be given to his testimony and showing that in the opinion of the court the witness had committed perjury. Had the court made use of the remarks in question in a formal instruction to the jury, no one could doubt, we think, as to its impropriety. We think it was equally improper for the court to make the remark when and in the manner made.

It is urged by counsel for defendant, that in the instructions given by the court to the jury, the court improperly assumed the truth of matters material to the question involved, which had not been proved, and of others concerning which there was a conflict of the evidence; and that,

although the court left the facts to be decided by the jury, the instructions, taken together, strangely indicate a leaning of the court against the defendant.    We quote from the record the tenth and twelfth instructions:  " 10. Now, if Sarah Ripperdan had connection with any other man, who was it ?   Was it Wesley Ripperdan?   What did Wesley Ripperdan swear upon that subject ?   What did Sarah Ripperdan swear?   In oppisition to Wesley Ripperdan and Sarah Ripperdan, what creidble witness was there who proved that they ever had any connection ?   That is for you to say. Were there any circumstances proved which were strong enough to overbalance the direct and positive testimony of Wesley Ripperdan ?   What do you think of Decker's evidence as opposed to Ripperdan's ?   What was the manner and bearing of Decker as compared with the manner and bearing of Wesley Ripperdan ?   These questions it is your exclusive business to determine.    But you cannot find that Wesley Ripperdan, or any other man, had carnal knowledge of Sarah Ripperdan, unless you are satisfied of it by a preponderance of proof; and you ought not forget here that Wesley Ripperdan was the girl's own uncle—her nearest blood relation next to her brothers and sisters."

" 12. Gentlemen, it was said by the wisest man that ever lived, and the saying has been recorded in Holy Writ for our instruction, that there were three things too hard for even his wisdom, and one of them was 'the way of a man with a maid.'   Now, suppose a full grown man, twenty-five or thirty years of age, has followed a young and artless girl steadily from the age of fifteen to eighteen, keeping her company to the exclusion of everybody else, gradually becoming more familiar with her, until finally, in a moment of weakness, worn out by long resistance, all her defences are broken down, and she has given him the strongest proof of affection that such a young girl could give. · For awhile there is no trouble, but at length pregnancy is discovered ; then the young girl is threatened and scolded by her parents ; she tries to hide her shame; her neighbors, her young

friends, are worrying her about it; the women are severe upon her. In her anguish, she knows not what to do. Apparently, she has no friend but him to whom she has given all she could give. When he comes, he says, 'your father will kill me unless you clear me of this thing; I will marry you if you will put this thing down in writing.' Then, under the influence of this promise, like a drowning man catching at a straw, she does what he requests; but he, in the mean time, pretending to be her friend, had been consulting a lawyer against her; the very paper he gave her to sign was prepared by a lawyer. In such a case, 'the way of a young man with a maid' would be hard indeed." The court then adds: "Now it is for you to determine what the evidence shows in this case. If you are satisfied by the proof that circumstances as I have just supposed occurred in the present case, then it will be for you to determine what effect, if any, a falsehood so told by the woman ought to have upon her testimony."

In our opinion, the instructions in question are liable to the objections urged against them. *Swank* v. *Nichols' Adm'r*, 24 Ind. 199; *Shank* v. *The State, ex rel. Robinson*, 25 Ind. 207; *The Jeffersonville R. R. Co.* v. *Swift*, 26 Ind. 459; *Carter* v. *Pomeroy*, 30 Ind. 438.

Another ground of the motion for a new trial was the refusal of the court to give the second charge asked by the defendant, to the effect that if the jury believed from the evidence of the witnesses Cox and Decker, or either of them, that Sarah C. Ripperdan, the prosecuting witness in this case, had submitted to improper connection with any other man than the defendant, about the time when the child was begotten, this circumstance destroyed her competency as a witness to prove that the defendant was the father of her child, etc. We think there was no error in refusing this instruction. We are referred by counsel for the appellant to *Whitman* v. *The State*, 34 Ind. 360, as authority to show that this instruction should have been given. In that case, the prosecuting witness did not pretend to know at what

particular time she was impregnated. In the case under consideration, the witness did claim to know when that event occurred, and she gave reasons for her belief. In the case cited, the court expressly said: "No doubt, circumstances might exist which would enable the female to determine which of two or more connections at about the time of conception was the one producing pregnancy. But, as we have already said, no such circumstance is shown in this case."

Some other questions are discussed in the case, but we do not deem it necessary to consider or decide them.

The judgment is reversed, and the cause remanded, with instructions to grant a new trial.