Lewis v. Christie.

Filed Jan. 9, 1885.

———————

No. 11,639.

LEWIS v. CHRISTIE.

INSTRUCTIONS.—*Invading Province of Jury.*—It is error to instruct the jury in the language of 1 Greenl. Ev., sec. 200, expressing the necessity of caution as to evidence of admissions of parties, and the reasons for such caution, as that author gives them, because it invades the province of the jury as to matters of which the jurors are the exclusive judges.

SAME.—*Harmless Error.*—An instruction against a defendant, which is erroneous, will not be held harmless merely because his answer was bad.

From the Jefferson Circuit Court.

*A. D. Vanosdol, H. Francisco, E. R. Wilson, J. W. Gordon* and *L. O. Bailey,* for appellant.

*E. G. Hay, W. S. Friedley* and *C. A. Korbly,* for appellee.

BICKNELL, C. C.—In this case several errors are assigned, but they are all waived except alleged errors of the court in giving and refusing instructions.

The appellee brought this suit against the appellant to recover $1,000, as liquidated damages for the breach of the following written contract:

" Know all men by these presents, that this agreement, entered into by and between James H. Christie of the first part, and Samuel B. Lewis of the second part, witnesseth, that in consideration of James H. Christie of the first part making Samuel B. Lewis a warranty deed to two-fifths of the undivided interests in the real estate of the late Preston Christie, deceased, valued at $1,400, situate in Ripley county, Indiana, the said Samuel B. Lewis of the second part agrees to make

to James H. Christie of the first part a warranty deed to the following lots: Nos. 19 and 20 of the Lewis addition, situated in Canaan, Jefferson county, Indiana, valued at $700, and his good-will and influence valued at $700, and the party of the second part is not to locate as practitioner of medicine and surgery at any point within five miles from Canaan, in said county, unless the party of the first part consents thereto in writing, and it is further stipulated and agreed that the party of the second part, violating the terms of this agreement, shall pay the party of the first part $1,000, as liquidated damages, in full of such breaches of this agreement. This agreement is signed in duplicate. Witness our hands and seals this 27th day of February, 1882.

"JAMES H. CHRISTIE. [SEAL.]

"SAMUEL B. LEWIS. [SEAL.]"

This suit was commenced in July, 1883. The complaint avers that the deeds provided for in the agreement were executed, and that the parties respectively were put in possession of the property thereby conveyed. The breach alleged is that the defendant has removed back to said town of Canaan, has located there, and is practicing medicine and surgery in said town and vicinity, and within five miles of said town, without the written consent of the plaintiff, and has withheld from the plaintiff his good-will and influence, and is using all his influence against the plaintiff and trying to prevent him from receiving any benefit from said contract. The complaint states that the defendant has violated said contract, as aforesaid, all the time from April 1st, 1883, to the time this suit was commenced. The defendant answered in two paragraphs.

1. Admitting the execution of the contract as alleged in the complaint, and averring that about the 3d of March, 1882, the parties made a partnership for the practice of medicine and surgery in said town of Canaan, and by its terms said defendant was to practice medicine and surgery there until the autumn of 1882, and then was to move to Canaan with his

family and continue the practice of medicine and surgery there as long as they could agree. Wherefore, etc.

2. Admitting the execution of the contract as stated in the complaint, and averring that in the month of March, 1882, the plaintiff and defendant rescinded the contract sued on by forming a partnership for the practice of medicine and surgery at said town of Canaan, and did so practice from that time onward, so long as they could mutually agree. Wherefore, etc.

A demurrer to the first of these paragraphs of answer was overruled, and the plaintiff filed a reply to the entire answer, denying each of its allegations. The issues were tried by a jury, who returned a verdict for the plaintiff for $1,000, the amount of the liquidated damages.

A motion by the defendant for a new trial was overruled, and judgment was rendered on the verdict. The defendant appealed. The only matter relied on by the appellant for the reversal of the judgment is, that the court erred in giving and refusing instructions.

The appellee claims that the evidence is not in the record, and that, therefore, the instructions can not be considered. He says a certain paper mentioned in the testimony of John Cramer ought to be in the bill of exceptions. The defendant being a witness in his own behalf, the plaintiff's counsel, on cross-examination, asked him as to an alleged conversation between him and John Cramer at Cramer's shoe shop, March 4th, 1882.

Instead of stating the alleged conversation orally to the defendant, it appears that the plaintiff's counsel read it to him from a paper; the defendant denied that any such conversation had taken place; the question thus put to Dr. Lewis, containing the whole of the alleged conversation, appears in the bill of exceptions. Afterwards, John Cramer was sworn to prove that there was such a conversation, and he testified thus: "'I live at Canaan; I am a shoemaker; I have lived there four years in September; I lived in Madi-

son before I went to Canaan; I know the parties; I have known the defendant ever since I moved to Canaan, and Dr. Christie afterwards; conversation with Dr. Lewis at Canaan in my shoe shop, March 4th, 1882; I did have such conversation; Dr. Lewis said just them very words that paper speaks; he did say so,' (as in last question stated)."

The appellee claims that the bill of exceptions does not show what this "last question" was. The fair inference is that this "last question," to which reference is thus made, contained a statement in full of the alleged conversation and was read to Cramer from the paper in presence of the jury, but the appellee claims that neither the question, nor the paper, nor its contents are set out in the bill of exceptions.

The statement in the bill of exceptions is that John Cramer in answer to some "last question" replied, "Dr. Lewis said the very words that paper speaks," but the appellee claims that this "last question" is not set out, and that the bill of exceptions does not purport to show what "that paper" did speak.

We are of opinion that the statement in the bill of exceptions, "this was all the evidence given in the case," is not falsified by the record. Undoubtedly, the question put to Dr. Lewis in reference to the alleged conversation with Cramer at the shoe shop, in March, 1882, was read to Lewis from a paper; it does not appear that the paper was offered in evidence; such a reading is the same in effect as a question put without any paper. It seems that the same question as to the alleged conversation was read to the witness Cramer from the paper, to which he replied, "'Dr. Lewis said just the very words that paper speaks; he did say so,' (as in last question stated)."

We think that from the cross-examination of Lewis and the entire examination of Cramer, as given in the bill of exceptions, it sufficiently appears that the "last question," mentioned in Cramer's testimony, is the same question read first to Lewis from the paper and then to Cramer from the paper,

and we think the cross-examination of Lewis states exactly what the question was. We, therefore, can not say that no question is presented on the instructions.

Some of the objections to the instructions are expressly waived by the appellant in his brief. We need not consider any of the others except the twelfth, given by the court to the jury at the request of the plaintiff and excepted to by the defendant.

The twelfth instruction given by the court is as follows:

"12. Evidence of the admissions of the parties to this action has been given to you. Such evidence ought to be received with great caution. Such evidence, consisting of mere repetition of oral statements, is subject to much imperfection and mistake, the party himself either being misinformed, or not having clearly understood his own meaning, or the witness having misunderstood him. It frequently happens, also, that by a witness unintentionally altering a few of the expressions really used, gives an effect to a statement, completely at variance with what the parties actually did say; but, in a case where you find that an admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature."

This instruction is taken from section 200 of 1 Greenleaf on Evidence, but it is changed; Greenleaf says: "The party himself either being misinformed, or not having clearly *expressed* his own meaning;" whereas the instruction here given is, "not having clearly *understood* his own meaning."

The appellant claims that the above instruction was erroneous. He says: "What the parties had done they knew; they spoke of their own transactions; they could not have been misinformed. * * * But how could a party fail clearly to understand his own meaning? It is easy for any one to 'not clearly express his own meaning, but not to understand his own meaning,' is impossible, if he has any meaning."

We need not determine whether the instruction, if otherwise valid, would be vitiated by this error, because this court

has held that said section 200 of 1 Greenleaf on Evidence, ought not, in Indiana, to be given to the jury as law in an instruction by the court.

In *Finch* v. *Bergins*, 89 Ind. 360, the judgment was reversed because the court below had given an instruction adopting the very words of Greenleaf in the section above mentioned, and HOWK, J., in delivering the opinion of the court, said: "Of this section of Greenleaf's text, in a similar instruction in *Davis* v. *Hardy*, 76 Ind. 272, this court said: 'To give it in a charge, as written, would, in this State, be an invasion of the jury's exclusive right to judge of the credibility and weight of evidence. It is proper matter of argument that such evidence is subject to imperfection and discredit, for the reasons suggested, and the court may direct the jury's attention to the subject. But it is not for the court to say, as matter of law, in reference to the evidence of this kind, given in a particular case, that it is subject to much imperfection; or that "it frequently happens that the witness, by unintentionally altering a few expressions really used, gives an effect to the statement completely at variance with what the party did say;" or that, where "the admission is deliberately made and precisely identified, the evidence is often of the most satisfactory nature." These are matters of fact, experience and argument, but not otherwise the subject of legal cognizance.'

"So, in *Garfield* v. *State*, 74 Ind. 60, in commenting on an instruction transcribed, like the one above quoted, from 1 Greenleaf on Evidence, this court said: 'It is not every statement of the law found in a text-book or opinion of a judge, however well and accurately put, which can properly be embodied in an instruction. * * * The instruction under consideration does not contain a single proposition of law, but only declarations of supposed facts, which common experience has perhaps established as true. The teachings of experience on questions of fact are not, however, doctrines of law, which may be announced as such from the bench. * * * * They may well enter into the arguments of attorneys,

* * * but the jury, not the judge, is the arbiter of such contentions. * * * The most that the judge may do, under our practice, which leaves questions of fact entirely to the jury, is to direct the attention of the jurors to such propositions and leave them, in the light of their experience, to say what credit should be given to any testimony on account of its alleged doubtful character.'"

In the case of *Woollen* v. *Whitacre*, 91 Ind. 502, this court said, by HAMMOND, J.: "The decisions of this court are numerous to the effect that it is error for the court to say or intimate to the jury that any circumstance or fact should be considered by them to the disparagement of a witness's testimony." And the rule above indicated in *Finch* v. *Bergins*, *supra*, is supported by *Nelson* v. *Vorce*, 55 Ind. 455; *Pratt* v. *State*, 56 Ind. 179; *Millner* v. *Eglin*, 64 Ind. 197 (31 Am. R. 121); *Jackman* v. *State*, 71 Ind. 149; *Works* v. *Stevens*, 76 Ind. 181.

The foregoing authorities clearly show that the court erred in giving to the jury the aforesaid instruction No. 12, and for this error of law the motion for a new trial ought to have been sustained.

The judgment ought to be reversed.

PER CURIAM.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and the same is hereby in all things reversed, at the costs of the appellee, and this cause is remanded for a new trial.

Filed Nov. 19, 1884.

## ON PETITION FOR A REHEARING.

BICKNELL, C. C.—The appellee admits that the court below erred in its instruction No. 12, and he states that he does not ask this court to reconsider its ruling upon said instruction, but he claims a rehearing because, as he alleges, the defences of the appellant are bad, and, therefore, the erroneous instruction was harmless.

The appellee demurred to the appellant's first defence, and

his demurrer was overruled, but as he has not assigned any cross errors, he is not in a position to question the ruling of the court on said demurrer. Buskirk Pr. 119; *Jenkins* v. *Peckinpaugh*, 40 Ind. 133.

The appellee considered the second defence sufficient, and took issue on it. If at the proper time he had moved for judgment upon the pleadings, and upon the overruling of that motion had excepted, he could have presented the question arising thereon by a proper assignment of cross error. There is no such question now before us.

The petition ought to be overruled.

PER CURIAM.—The petition for a rehearing is overruled.

Filed March 13, 1885.