Durham *et al. v.* Smith.

No. 14,220.

## DURHAM ET AL. *v.* SMITH.

WILL.—*Capacity of Testatrix.*—*Instruction to Jury.*—An instruction to the jury that a person of unsound mind, all mental defects being included in the word "unsound," is incapable of making a valid will, whether or not such unsoundness affected the disposition of the property, is erroneous.

SAME.—*Witnesses.*—*Credibility of.*—*Instruction to Jury.*—Where a jury is charged that witnesses residing near the testatrix, being more intimate with her, and having better opportunities of observation than those living farther away, other things being equal, are entitled to greater credit, the instruction is erroneous, as an invasion of the province of the jury.

INSTRUCTIONS.—*Relating to Evidence.*—*When Erroneous.*—It is only the duty of the court, in case of an instruction in regard to the evidence, to look into the record and determine whether there is any evidence to which the instruction is applicable, and if there is, and the instruction is erroneous, and such as is liable to mislead the jury, the judgment must be reversed.

From the Vigo Circuit Court.

*R. W. Thompson, J. G. Williams, B. Harrison, W. H. H. Miller* and *J. B. Elam,* for appellants.

*S. C. Davis, S. B. Davis, J. G. McNutt, C. F. McNutt, G. E. Pugh* and *J. D. Pugh,* for appellee.

OLDS, J.—This was an action to contest and set aside the will and probate thereof of Esther B. Thornton, deceased. The action was commenced by the appellee against the appellants, Milton L. Durham, executor of Milton L. Durham in his own right, the Rose Orphan Home, also against John D. Pugh, Horace C. Pugh and George E. Pugh. The interests of the three last named parties were with the plaintiff, and they do not appeal, and have served notice upon their codefendants in accordance with the statute.

The testatrix, Esther B. Thornton, was an aged maiden lady, possessed of several thousand dollars' worth of prop-

erty. The will was made on May 9th, 1884, and she died in January, 1885. The plaintiff was her niece, Milton L. Durham her nephew, the three Pughs were her grand-nephews, the children of her niece. The testatrix, by her will gave to her nephew and niece, and to her grand-nephews, each small legacies, and gave the balance of her estate, real and personal, to her nephew, Milton L. Durham for life, with remainder to the Rose Orphan Home.

There was a trial by jury, resulting in a verdict and judgment for the plaintiff, setting aside the will and probate thereof.

A motion for a new trial by appellants was overruled, and exceptions taken.

Several errors are assigned and discussed, but owing to the conclusion we have arrived at as to some of the questions presented it is unnecessary to consider the others.

We will first consider the question relating to instruction six given by the court, and which appellants contend is erroneous. The instruction is as follows:

" 6. Furthermore, I instruct you that a person who is of unsound mind is incapable of making a valid will, and if there is unsoundness of mind, it is not necessary for the contestant to show that such unsoundness had anything to do with the manner of disposing of the property. In such a case the will is invalid, whether it is shown that the unsoundness of mind had, or had not, affected the character of the testament."

We do not think this instruction, unexplained or modified by some other instruction, states the law relating to the validity of wills correctly, and we think it would tend to mislead the jury.

It is contended on the part of the appellee that our statute defines who are of unsound mind as follows: "The words 'person of unsound mind,' as used in this act or any other statute of this State, shall be taken to mean any idiot, non-compos, lunatic, monomaniac, or distracted person," R.

S. 1881, sec. 2544, and counsel say that "the words 'unsoundness of mind,' as used in the sixth instruction, are used in the sense of the statute, and not in their broad and common sense, including every species of defectiveness and impairment of mind or memory, but apply only to such cases as are absolutely unsound, as idiots, non-compos, lunatics, monomaniacs, and distracted persons," and that the "meaning of the two statutes, construed together, would be that all persons except minors, lunatics, idiots, non-compos, monomaniacs and distracted persons may devise."

We do not agree with the theory of counsel as to the scope of this instruction.

We think the words "unsoundness of mind" are used in this instruction in their broadest sense, including every species of defectiveness and impairment of the mind, and would be so construed by the jury, and the instruction, taken by itself, would not convey to the minds of the jury the true rule by which they should test the validity of the will. If the charge only included the words, "I instruct you that a person who is of unsound mind is incapable of making a valid will, and if there is unsoundness of mind it is not necessary for the contestant to show that such unsoundness had anything to do with the manner of disposing of the property," it would not be objectionable, as it would in that case state an abstract principle of law correctly. Unsoundness of mind having been proven, it would then be incumbent on the defendant to show that the unsoundness was of such a character as did not impair the mind to such an extent as to render the testatrix incapable of making a will, or that the defect in the mind in no way affected the disposition of the property, or entered into the making of the testament. What might be regarded as mental unsoundness may have been proven, and yet it may have been made to appear, from all the evidence in the case, that the mental unsoundness did not enter into the will. *Higgins* v. *Carlton,* 92 Am. Dec. 666 (28 Md.

115); *Hovey* v. *Chase,* 83 Am. Dec. 514 (52 Me. 304); *Rogers* v. *Walker,* 47 Am. Dec. 470; *Clark* v. *Fisher,* 19 Am. Dec. 402.

By adding the words "in such a case the will is invalid whether it is shown that the unsoundness had or had not affected the character of the testament," it changed the scope and meaning of the instruction, and was, in effect, telling the jury that, upon considering all the evidence, if they came to the conclusion there was any unsoundness of mind, or defect of any character in the mind of the testatrix, no difference to what extent such defect affected or impaired the mind, or whether it in any way affected the disposition of the property devised or the making of the will, the will would be invalid; and this, too, even though the evidence might affirmatively establish the fact that such defect in no way entered into the making of the will or disposition of the property, and that she had at the time sufficient mental capacity to make a valid will. In short, this charge recognizes but two conditions of the human mind, one sound and capable of doing all acts, and the other unsound and incapable of doing any act; that a person is responsible for all his acts, or not responsible for any of his acts. This is an erroneous theory of the law. *Trumbull* v. *Gibbons,* 51 Am. Dec. 253; *Clark* v. *Fisher, supra; Jackson* v. *King,* 15 Am. Dec. 354, and note, 363.

In the case of *Lowder* v. *Lowder,* 58 Ind. 538, it was held that, "In legal contemplation, one who has sufficient mind to know and understand the business in which he is engaged, who has sufficient mental capacity to enable him to know and understand the extent of his estate, the persons who would naturally be supposed to be the objects of his bounty, and who could keep these in his mind long enough to, and could, form a rational judgment in relation to them, is a person of sound mind." It is evident that a person might be possessed of the requisite capacity to make a will, as held in *Lowder* v. *Lowder, supra,* and yet have some de-

fect of the mind, some delusion in relation to some subject entirely foreign to the execution of the will, the disposition of the property, the devisees, or those who are the natural objects of his bounty.

It is not necessary that we point out in this opinion what particular defects, or delusions, there may be in a testator's mind, and yet he possess sufficient mental capacity to make a valid will; it is sufficient if there may be any to render the instruction under consideration erroneous, and it is manifest there are some. See *Addington* v. *Wilson,* 5 Ind. 137 (61 Am. Dec. 81, and note, 84) ; *Kenworthy* v. *Williams,* 5 Ind. 375, and authorities hereinbefore cited.

We think the instruction clearly erroneous, and ought not to have been given. It is contended that even if erroneous it was cured by other instructions given, which did correctly state the proper rules governing the mental capacity of the testatrix to make a valid will, but this we need not consider, for the reason that the judgment must be reversed on account of another erroneous instruction.

So much of the fifteenth instruction given by the court as it is necessary to consider is as follows:

" 15. In weighing the testimony of witnesses the jury should consider the capacity of each witness to understand the facts about which he testifies ; his opportunity of knowing the mental condition of the testatrix at the time the will was executed, his or her integrity, bias, behavior on the witness stand, and the entire deportment of the witness. The opinion of a witness whose attention has been particularly called to the testatrix, who was familiarly acquainted with her, who had frequent opportunities of observing her and the operations of her mind, is entitled to greater weight than that of a witness of equal sagacity, whose opportunity of forming an opinion was more limited. The facts upon which the opinions of the witnesses are based have been stated to you, and you should weigh the opinions thus expressed by the facts stated."

Similar instructions to this have been repeatedly considered by this court, and held erroneous on the ground that the court invaded the province of the jury by directing them that the testimony of one class of witnesses was entitled to more weight than the testimony of others, and the cases relating thereto are collected in the case of *Cline* v. *Lindsey*, 110 Ind. 337. This instruction was clearly erroneous, but counsel contend that it was most favorable to the appellants, whose witnesses, or the greater number of them, resided nearer to the testatrix during her lifetime, and were more intimate with her than the witnesses of the appellee. It is not contended that all of the witnesses for the appellants resided nearer to and were more intimate with the testatrix than any of the witnesses for the appellee, and even if this was the fact, we doubt if the instruction could be sustained on the ground that no harm was done the appellants. It is only the duty of the court, in case of an instruction in regard to the evidence, to look into the record and determine whether there is any evidence to which the instruction relates or applies, and if there is, and the instruction is erroneous, and such as would be liable to mislead the jury, then the judgment must be reversed; and such is the fact in this case, and for this error the judgment must be reversed.

The cause having to be reversed for the giving of instruction number fifteen, it is unnecessary to consider the other questions presented, for they are not such as will be liable to arise on a retrial of the cause.

Judgment reversed, with costs.

Filed Oct. 29, 1889.