## MUNCIE PULP COMPANY *v.* KEESLING.

[No. 20,597. Filed February 21, 1906. Rehearing denied May 17, 1906.]

1. PLEADING. — *Complaint.—Nuisance.—Damages.—Waters and Watercourses.—*A complaint showing that defendant discharged large quantities of poisonous refuse from its pulp-mill into a creek which runs through plaintiff's land, thereby destroying and rendering unfit for cultivation a large part thereof, killing the fish in such creek, rendering the waters of such stream unfit for agricultural or domestic purposes, causing noxious and poisonous odors to arise therefrom and reducing the value of plaintiff's land from $100 to $60 per acre, states a cause of action for damages. p. 482.

2.  PLEADING.—*Complaint.*—*Nuisance.*—*Temporary.*—*Damages.*—*Waters and Watercourses.*—A complaint showing that defendant discharged poisonous refuse from its pulp-mill into a creek running through plaintiff's farm, thereby killing the fish in such creek, creating poisonous and noxious odors, rendering the waters of such creek unfit for domestic or agricultural purposes and decreasing the value of plaintiff's land $40 per acre, shows that such nuisance was of a temporary nature, and therefore, the depreciation of rental value is an element of damages. p. 485.

3.  SAME.—*Complaint.*—*Nuisance.*—*Waters and Watercourses.*—*Damages.*—Where a complaint shows that defendant polluted a creek which runs through plaintiff's land, thereby rendering such land unfit to raise crops, and rendering such waters unfit for domestic or agricultural purposes, the diminution of the rental value of such land is recoverable without any special allegation thereof, such damage being the natural result of the wrongful acts alleged. p. 486.

4.  NUISANCE. — *Temporary.*—*Waters and Watercourses.*—*Damages.*—*Rental Value.*—Where the nuisance caused by the pollution of a watercourse is of a temporary character, the measure of damages recoverable is the diminution of the rental value of the lands injured, during the time such nuisance is maintained. p. 487.

5.  TRIAL.—*Instructions.*—*Invasion of Province of Jury.*—*Weighing Testimony.* — *Witnesses.* — An instruction that the jury should give greater weight and credit to those witnesses whose means of information were superior, and to those who swear affirmatively to a fact, is an invasion of the province of the jury. *Jones* v. *Casler*, 139 Ind. 382, followed. p. 488.

6.  APPEAL AND ERROR.—*Instructions.*—*Prejudicial Error.*—Where the record fails to show that an instruction invading the province of the jury was harmless, the judgment will be reversed. p. 489.

7.  SAME.—*Subsequent Trial.*—*Questions Decided.*—The Supreme Court will not decide questions not likely to arise on a subsequent trial, a reversal being ordered on other grounds. p. 489.

From Randolph Circuit Court; *John W. Macy,* Judge.

Action by Henry C. Keesling against the Muncie Pulp Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court under §1337u Burns 1901, Acts 1901, p. 590. *Reversed.*

*Engle, Caldwell & Parry, W. A. Thompson* and *W. H. Thompson,* for appellant.

*Nichols, Goodrich & Bales* and *Harding, Hovey & Wiltsie,* for appellee.

JORDAN, J.—This action was originally commenced by appellee against appellant in the Delaware Circuit Court to recover damages for injuries sustained to his premises, attributed to the pollution by appellant of a certain stream of water known as Buck creek.

The complaint is in two paragraphs, each of which was held to be sufficient on demurrer for want of facts. The answer of appellant was a general denial and the statute of limitations. On change of venue the cause was tried by a jury in the Randolph Circuit Court, and a verdict returned in favor of appellee, awarding him damages in the sum of $4,000. Appellant's motion for a new trial, assigning various reasons therefor, was denied and judgment was rendered on the verdict.

The errors assigned and relied on for reversal are: (1) Overruling the demurrer to each paragraph of the complaint; (2) overruling the motion for a new trial.

The first paragraph of the complaint alleges that the defendant is a corporation organized under the laws of the state of New York, and is doing business in the State of Indiana; that before the time of committing the wrongs hereinafter described the plaintiff was and still is the owner in fee simple of a certain farm in Delaware county, in the State of Indiana (describing the land), containing 148 acres, through which the water of a certain stream known as Buck creek was accustomed to flow; that the defendant is the owner of a pulp-mill, located on said creek above plaintiff's farm; that the defendant empties, and for some time has emptied, the refuse of its said mill into said creek; that said refuse contains acid and other unwholesome ingredients, and the sediment thereof has accumulated and filled the channel of said creek, and in accumulating and

filling up the channel of said creek has spread and is spreading over the lands of plaintiff, thereby rendering a large area thereof, to wit, sixty acres, untenantable and unfit for use, and on divers occasions has destroyed, and is now destroying, growing crops thereon, and has rendered, and is now rendering, the water in said creek unfit for use in watering stock and for other farm purposes, and has made said land of plaintiff practically worthless and unmarketable—all of which has damaged him in the sum of $15,000, for which he demands judgment and for all proper relief.

The second paragraph, in like manner as the first, alleges that the defendant, the Muncie Pulp Company, is a corporation, etc., and is engaged in the manufacture of wood pulp, and is the owner of certain described lands situate upon said creek about one mile above the lands of the plaintiff; that the ownership of plaintiff in the lands described in the complaint is shown, and it is alleged that these lands, before the wrongful acts of said defendant of which plaintiff complains, were improved, fertile and productive, producing large crops of grain, vegetables and other farm products, and well adapted to stock raising; that there is located on said premises and lands a dwelling-house, barn and other buildings, and that plaintiff and his family now reside upon said lands, and had so resided for many years prior to the commencement of this action. It is averred that said Buck creek is a natural watercourse and flows through said lands of plaintiff, and that said creek is a continuous and living stream; that prior to the grievances hereinafter mentioned said stream of water was largely fed by springs and afforded pure and excellent water for live stock, and for farming and domestic purposes; that in the year 1888 the defendant erected a large pulp-mill upon the lands owned by it, and placed thereon vats, machinery and other appliances for the manufacture of wood-pulp, and

has been continuously engaged in said business from that time until the present; that in the operation of said mills the defendant uses various kinds of acids, minerals and poisonous and noxious substances, the properties of which are to the plaintiff unknown.    The pleading then particularly discloses that in washing and carrying on the process of manufacturing the wood-pulp large quantities of water are used, which water, after being impregnated with said acids, minerals and poisonous substances, is permitted and caused by the defendant to flow into said Buck creek, and ever since the erection and construction of the defendant's mill this water, containing said acids, minerals, poisonous substances, etc., has flowed into said creek, and has poisoned and polluted the waters thereof and rendered the same unfit for agricultural and domestic purposes, and unfit to be used by the live stock and animals on plaintiff's farm and in the locality thereof.

It is further alleged that the defendant has caused, and is now causing, large quantities of said minerals and other refuse matters and poisonous substances and sediments from its said mill and factory to flow into said stream and be deposited in the bottom and sides thereof, and upon the lands adjacent thereto, and that said refuse, sediments and poisonous substances have been carried and are now being carried by the waters of said stream down to and upon plaintiff's land, and have spread, and are now spreading over the same, and have polluted and poisoned said land so much that grain, grass and other crops will not grow thereon; that the defendant has entirely destroyed and rendered useless thereby sixty acres of plaintiff's said land; that said substances and minerals so permitted by the defendant to flow in and upon plaintiff's land becomes hard and crusted, and in a great measure has destroyed said land for agricultural purposes and for the raising of stock; that the land so overflowed and destroyed is situated about the center of plaintiff's farm, and the waters of said stream,

by being so poisoned, polluted and contaminated by said substances, produce, and have produced, a great and sickening stench, and that noxious exhalations and noxious and offensive smells arise therefrom, which render the habitation near said stream unhealthful, unpleasant and injurious; that said noxious and offensive odors and smells are offensive to the senses and interfere with the comfortable enjoyment of life and property of the plaintiff and to other inhabitants of said locality; that prior to the pollution of said creek by the defendant it contained many fish which afforded food to the plaintiff and his family and other inhabitants of said locality; that since the pollution thereof all the fish therein have been destroyed by and on account of the pollution, and it is impossible for such fish to live or to exist in said stream; that by reason of the noxious, nauseous, unhealthful, offensive and poisonous substances the plaintiff's lands have been greatly injured and damaged for farming purposes, for stock raising and also as a dwelling place for himself and family; that before the commission of the wrongs and grievances complained of plaintiff's lands were worth $100 per acre; that since the commission of the wrongs in question and by reason thereof said lands are worth only $60 per acre; that defendant is still committing the injury to plaintiff's land as hereinbefore described, and intends so to continue to do indefinitely; that by reason of the wrong and injury to plaintiff's premises herein complained of he is damaged in the sum of $15,000, for which he demands judgment and all other proper relief.

It is insisted by appellant's counsel that the court erred in overruling the demurrer to the first paragraph of the complaint, and to sustain their contention they point out six objections, among which are: (1) Because there is no direct allegation that the stream of water in controversy ran by or through the lands of appellee; (2) there is no averment that appellant company ran and operated the

pulp-mill mentioned in the complaint; (3) there is no allegation that appellant emptied the refuse from said mill into Buck creek, etc. We cannot commend this paragraph as a model pleading, and possibly it is open to the objections that it is not as direct and positive in its character as the rules of good pleading require; but as the judgment must be reversed on another ground, and as all of the objections to the pleading may be obviated by amendment upon another trial, we therefore do not consider its sufficiency in this appeal.

It is contended also that the second paragraph of the complaint does not show a good cause of action and is bad pleading, because the facts therein stated are not direct, but are mainly in narrative form. But these contentions are not sustained, and we hold that the paragraph sufficiently states a cause of action. That this is true is settled by the decisions of this court. See *Muncie Pulp Co. v. Martin* (1904), 164 Ind. 30, and cases there cited; *West Muncie Strawboard Co. v. Slack* (1904), 164 Ind. 21; *Weston Paper Co. v. Pope* (1900), 155 Ind. 394, 56 L. R. A. 899. See, also, *Muncie Pulp Co. v. Martin* (1899), 23 Ind. App. 558; *Muncie Pulp Co. v. Koontz* (1904), 33 Ind. App. 532.

Counsel for appellant next assert that there is no specific allegation in either paragraph of complaint that the rental value of the lands in controversy has been 2. diminished, or that a demand for the recovery of such damages has been made, and therefore the argument is advanced that there can be no recovery of such damages. It is contended that appellee in his complaint proceeds upon the theory of permanent injury to his premises, consequently there can be no recovery of damages for the diminution of rental value. Counsel, however, are mistaken in their view in regard to the theory of the second paragraph of the complaint, for when tested or construed by the general scope thereof it is apparent that the

theory thereby outlined is to recover damages for injuries due to a cause of an impermanent nature or character, or, in other words, attributable to what, as shown by the facts alleged, is a temporary nuisance, or one which may be abated. The paragraph in question closes with the charge that by reason of the wrongs and injuries to plaintiff's premises therein complained of he has been damaged in the sum of $15,000. It is manifest from the very character of the wrongful acts set out in this paragraph that the pollution of the stream in controversy constitutes a continued nuisance rather than a permanent injury to appellee's premises, and the depreciation of their rental value is an essential element of the damages sustained. *Muncie Pulp Co.* v. *Martin* (1904), 164 Ind. 30.

Counsel contend that the damages due to the depreciation of the rental value of appellee's premises are special, and therefore there can be no recovery for such 3. damages, unless they are specifically alleged in the complaint. In the case of *Muncie Pulp Co.* v. *Martin* (1904), 164 Ind. 30, we held that under the form of the complaint therein the plaintiffs were entitled to recover for the temporary loss of the use of their lands. We are unable to perceive any substantial difference between the complaint in that case and the one at bar. It is true that the complaint in the Martin case contained a statement that the "rental and market value" of the lands involved had been diminished to the amount of $2,000, while in the case under review there is no specific averment to that effect; nevertheless there are allegations, or statements, in the second paragraph of the complaint which disclose that by reason of the poisonous acids, etc., which have been spread over appellee's lands by the polluted waters of the creek in controversy, grass and other crops will not grow thereon and that said lands have, to a great extent, been rendered unfit for agricultural purposes and the raising of stock. Depreciation or diminution of the rental

value of appellee's premises cannot be regarded in the nature of special damages, and, therefore, do not fall within the rule which requires that such damages be particularly shown or stated in the complaint in order that evidence on the trial may be given to establish them, but they were such damages as naturally or necessarily accrued or resulted from the wrongful acts as alleged in the second paragraph of the complaint. Therefore, under the averments to which we have above referred, and other allegations of said paragraph, appellee was entitled to recover for the injuries to his lands which were the necessary or natural consequences of the alleged wrongful acts of appellant. *Lindley* v. *Dempsey* (1873), 45 Ind. 246; *Hutts* v. *Shoaf* (1882), 88 Ind. 395; *Evansville, etc., R. Co.* v. *Holcomb* (1894), 9 Ind. App. 198; *Emery* v. *City of Lowell* (1872), 109 Mass. 197; *City of South Bend* v. *Paxon* (1879), 67 Ind. 228. 1 Chitty, Pleading (16th Am. ed.), *411, states the rule as follows: "Whenever the damages sustained have not necessarily accrued from the act complained of, and consequently are not implied by law, then, in order to prevent the surprise on defendant which might otherwise ensue on the trial, the plaintiff must in general state the particular damage which he has sustained, or he will not be permitted to give evidence of it."

Diminution of the rental value of land and the loss of some particular rent or rents are not virtually of the same character or nature and must not be confused with each other on the question of alleging special 4. damages in a pleading. As the facts alleged in the second paragraph of the complaint, which disclose the pollution of the creek or stream by appellant, do not necessarily constitute a nuisance of a permanent character, but one that may be abated, therefore, under the general rule affirmed by the authorities, the measure of damages is the loss or diminution of rental value of the premises occasioned during the time the nuisance is maintained. *Mun-*

cie Pulp Co. v. Martin (1904), 164 Ind. 30, and cases there cited; Indiana, etc., R. Co. v. Eberle (1887), 110 Ind. 542, 59 Am. Rep. 225; Weston Paper Co. v. Pope, supra; Shively v. Cedar Rapids, etc., R. Co. (1887), 74 Iowa 169, 37 N. W. 133, 7 Am. St. 471; Wallace v. Kansas City, etc., R. Co. (1892), 47 Mo. App. 491; Hoffman v. Flint, etc., R. Co. (1897), 114 Mich. 316, 72 N. W. 167; Threatt v. Brewer Mining Co. (1896), 49 S. C. 95, 26 S. E. 970; Watts v. Norfolk, etc., R. Co. (1894), 39 W. Va. 196, 19 S. E. 521, 23 L. R. A. 674, 45 Am. St. 894; Swift v. Broyles (1902), 115 Ga. 885, 42 S. E. 277, 58 L. R. A. 390. It follows, and we so conclude, that appellee in this action, under the averments of the second paragraph of the complaint, is · entitled to recover for the depreciation or diminution of the rental value of his property occasioned by the alleged nuisance, and therefore the court did not err in allowing him 'to introduce evidence to prove such damages.

The record discloses that the court on its own motion gave six instructions to the jury. The giving of each of these was assigned by appellant in its motion for a new trial. Number four of these instructions is as follows: "In determining the issues in this case you should take into consideration the whole of the evidence and all the facts and circumstances proved on the trial, giving the several parts of the evidence such weight as you think they are entitled to. *And the court instructs you that when witnesses are otherwise equally credible and their testimony otherwise entitled to equal weight, greater weight and credit should be given to those whose means of information were superior and also to those who swear affirmatively to a fact rather than to those who swear negatively or to a want of knowledge or recollection.*" (Our italics.)

Appellant's counsel assail this instruction, and insist that the giving thereof to the jury constituted reversible

error. In this contention we concur. An instruction identically the same as that portion of the one in question which we have embraced in italics was condemned by this court and held to constitute reversible error in *Jones* v. *Casler* (1894), 139 Ind. 382, 47 Am. St. 274. The question relative to the weight of the evidence was one wholly for the determination of the jury. That the trial court in giving the charge in controversy clearly invaded the province of the jury and therefore erred is settled beyond controversy, not only by the holding in *Jones* v. *Casler, supra,* but also by the following cases: *Blizzard* v. *Applegate* (1878), 61 Ind. 368; *Fulwider* v. *Ingels* (1882), 87 Ind. 414; *Shorb* v. *Kinzie* (1885), 100 Ind. 429; *Cline* v. *Lindsey* (1887), 110 Ind. 337; *Durham* v. *Smith* (1889), 120 Ind. 463; *Newman* v. *Hazelrigg* (1884), 96 Ind. 73; *Finch* v. *Bergins* (1883), 89 Ind. 360; *Lewis* v. *Christie* (1885), 99 Ind. 377; *Billings* v. *State* (1886), 107 Ind. 54, 57 Am. Rep. 77; *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, and cases there cited.

There is a sharp conflict in some essential respects between the witnesses who testified in behalf of appellant and those who testified on the part of the appellee, and 6. under the circumstances there is nothing in the record to disclose that the instruction in question was not prejudicial to appellant. The latter complains of the action of the court in giving certain instructions at the request of appellee, and in refusing others over its request; but the alleged errors in giving these instructions 7. are not properly assigned in the motion for a new trial, and therefore cannot be reviewed in this appeal. Other questions are presented and discussed by appellant's counsel, some of which may be said to be decided by our holding on the points raised in respect to the complaint, and in regard to the others it may be said that it is not clear that they will necessarily arise at the new trial. Therefore, these questions are not considered.

For the error in giving instruction four the judgment below is reversed, and the cause remanded, with instructions to the lower court to grant appellant a new trial and for further proceedings not inconsistent with this opinion.

Monks, J., did not participate in the decision of this case.