FABIAN *v.* GOLDSTONE ET AL.

[No. 18,189. Filed February 28, 1952. Rehearing denied April 21, 1952. Transfer denied November 13, 1952.]

50

*Ryan & Chester* of Valparaiso, and *Jay E. Darlington,* of Hammond, for appellant.

*Samuel S. Dubin* and *Draper & Eichorn,* of Gary, for appellees.

CRUMPACKER, J.—The appellant sought damages for alleged malpractice by the appellees, duly licensed doctors of medicine practicing their profession in Gary, Indiana, in treating her for "over weight" whereby, through a series of alleged blunders, her health has been ruined, her life expectancy greatly shortened and her capacity to earn a living destroyed. Having lost

her case below she asks us to reverse on the theory that she was deprived of a fair trial through a series of cumulative irregularities in the proceedings of the court and the prevailing parties. Burns' Stat., §2-2401.

In seeking to prove that the course of medical treatment administered by the appellees was not equal to the average degree of professional care and skill ■ possessed and exercised by members of the medical profession in good standing in Gary, Indiana, and similar communities, the appellant offered Dr. Edmund Fremont as a witness and he was asked for his opinion in reference thereto based on facts stated hypothetically. The appellees objected to the question for a number of reasons and in the presence of the jury the court announced its ruling as follows:

> "I am going to overrule the objection on the theory that the witness has stated his degree of knowledge which would make it appear as of some value, and let the jury determine what the testimony is worth; although I think that the better rule may be that this type of a witness should be a member of the profession in all respects at the time he gained the knowledge to which he testified."

Thereupon counsel for the appellant said: "Let the record show we except to the court's comments on the weight of evidence because that is the province of the jury."

This incident presents the first question involved in this appeal. The appellant contends that the remarks of the court, in the course of its ruling, disparaged the qualifications of Dr. Fremont as a witness and constituted an unfavorable reflection on the weight of the opinions he thereafter expressed. As Dr. Fremont was the only medical expert the appellant had, or was able to get, and as her whole case turned on questions

wholly within the knowledge of such experts, she contends that her cause of action was thus irreparably damaged in the eyes of the jury before it went to them for a verdict.

There is nothing in the record before us that indicates that the jury which heard this case was not composed of intelligent men and women. They were informed by proper instruction and knew that they were the exclusive judges of the credibility of the various witnesses and the weight to which their testimony was entitled. In this connection the court, in effect, said it had concluded that Dr. Fremont was qualified to express his opinion on the subject inquired about and such opinion was entitled to some weight but the question of how much weight it should be given was for the jury to determine. It seems to us that if these remarks, made by the court in announcing its ruling, were improper and prejudicial, it is the appellees who are entitled to complain as the court clearly indicated it thought Dr. Fremont's testimony would be of some value whereas the jury, the exclusive judges of the matter, may have considered that it had none whatever. All evidence in any law suit is admitted for what it is worth. In addition the jury is usually informed, as it was in the present case, that it and it alone must fix the ultimate value to be attached to any item of evidence and we cannot believe that the casual remark of the judge that the testimony of Dr. Fremont would be admitted because it appeared that it would have some value in determining the issues, could have been understood as a statement by the judge that in his opinion such testimony would be entitled to little weight. See *State of Montana Respt.* v. *Miles Fuller Appt.* (1906), 34 Mont. 12, 85 P. 369.

The statement of the court that it thought the "better rule may be that this type of a witness should be a member of the profession in all respects at the time he gained the knowledge to which he testified," if it was at all intelligible to the jury, could only be understood as an expression by the court of its intention to follow the law on the question of Dr. Fremont's qualification to testify as an expert although it thought some other test might be better. If the court concluded to follow the prevailing rule rather than what it thought the rule ought to be and the court's influence over the jurors was as profound as the appellant asserts, we have no reason to believe they rejected the court's attitude and repudiated Dr. Fremont's qualifications as an expert. However assuming, for the sake of the discussion, that the Judge's remarks were improper and constituted an irregularity in the proceedings of the court, they certainly did not constitute an error of law relief from which could be deferred until a motion for a new trial was filed. Appellant was bound to seek relief immediately through a motion that such remarks be withdrawn and the jury admonished. If the prejudice was so severe that it could not be cured in that manner then the appellant's remedy was a motion for a mistrial. She sought neither remedy and made no complaint until she filed her motion for a new trial. Thus she waived the question and took her chances on a favorable verdict. *Umbstead* v. *Preachers Aid Soc., etc.,* (1944), 223 Ind. 96, 58 N. E. 2d 441.

Among the objections to the competency of Dr. Fremont to testify as an expert witness was the fact that he is not and never has been licensed to practice medicine in Indiana. The record discloses, however, that he served as a resident physician at

the Methodist Hospital in Gary for a year and a half in 1941 and 1942. The court ruled that such experience qualified him to testify as to standard medical practice in Gary and similar communities even though not duly licensed by the State of Indiana then or at the time his testimony was given. Notwithstanding this ruling the appellees repeated such objection to each subsequent question the appellant asked the witness, and by such tactics, the appellant contends, they built up prejudice against the witness through continual emphasis on the fact that he held no license to practice in Indiana. Whether the continued repetition of this objection was necessary to save the question of the witness' qualification as an expert, we are not called upon to decide. The court overruled the objection each time it was made and the appellant was apparently satisfied as she asked no relief at the time from a practice which she now asserts was improper and prejudicial and of which she complained for the first time in her motion for a new trial. This was too late and the question is not available on appeal. *Blue* v. *State* (1946), 224 Ind. 394, 67 N. E. 2d 377; *Henning* v. *The State* (1886), 106 Ind. 386, 6 N. E. 803, 7 N. E. 4.

The appellant next contends that she was deprived of a fair trial by disparaging remarks made by the court to her counsel in the jury's presence. She calls our attention to but one incident of such alleged conduct. Her counsel was engaged in the redirect examination of Dr. Fremont and objection was interposed to one of his questions on the ground that the matter involved was not gone into on direct examination. In the course of its ruling the court said:

"On the other hand, the purpose of rules of procedure is to put an end to the trial. That, of course, is the reason for limiting your examination

on re-direct to cross-examination and the re-cross
to anything gone into on re-direct. I am going to
let him answer. . . . I would say, Mr. Darlington,
(appellant's counsel) I would like to get this trial
moving on."

The appellant construes this incident as an accusation
by the court that she was to blame for delaying the
trial, to which the jury would naturally react unfavor-
ably. We recognize, of course, that no court is justified
in sacrificing the rights of litigants for the mere pur-
pose of saving time. *Rooker* v. *Deering Southwestern
Ry. Co.* (1920), 206 Mo. App. 79, 226 S. W. 69. Nor
did the court do so in the present case as its ruling was
favorable to the appellant. Courts are charged with
the duty of managing trials as expeditiously as is con-
sistent with the rights of the parties and it cannot be
said that the suggestion of a judge that he "would like
to get this trial moving on," made to counsel then en-
gaged in the examination of a witness, is such a remark
as would so prejudice the jurors as to cause them to
disregard their oaths to try the case according to the
law and evidence. Furthermore the appellant again
failed to make any objection to the court's remarks at
the time they were made nor did she seek to have them
withdrawn and the jury properly admonished. She
reserved her protest until after the verdict which is too
late even though the incident of which she complains
was prejudicial. *Umbstead* v. *Preachers' Aid Soc., etc.,
supra.*

During the course of the trial the court excluded
certain evidence which the appellant insists was com-
petent and proper in proof of one of the acts of negli-
gence alleged in her complaint. She charges no specific
error in its exclusion but says that the court, in making
its ruling, manifested a critical attitude toward her

counsel thus aggravating the prejudice against her case. An examination of the record discloses that the court and appellant's counsel differed as to the legal import of the questioned allegation. Counsel argued that it charged negligence in administering thyroid extract without first taking precaution to ascertain that appellant's physical condition would permit it without danger of complications. The court construed the allegation as charging the appellees with the negligent administration of the drug and insisted that counsel frame his question so as to limit the inquiry to the proper practice in the community in regard to its administration. Counsel finally complied and got this answer: "The practice was to give the patient a complete examination including a metabolism test." It is evident that the court's attitude in no way prevented the appellant from eliciting, in substance, the testimony she sought and the altercation over the form of the question could have been avoided had her counsel made an offer to prove when the court interposed an objection to his question in its original form and then asked the question in the manner in which the court insisted. This he did not see fit to do but by his reluctance to comply brought on the remarks of the court of which the appellant now complains. If they were prejudicial they were invited by the conduct of her counsel.

Lastly the appellant contends that the court erroneously restricted her to an inadequate time for arguing a long and technical medical case, as the record shows this to be. The question arose as follows:

At the close of the evidence the court allowed each side one hour and fifteen minutes for argument to the jury. The appellant made no objection of record to the time allowed and agreed to the same only after considerable informal protest. Her counsel thereupon

addressed the jury for twenty minutes and rested with the statement that he would save the remainder of his time for closing argument. The appellees declined to answer and the appellant asked leave to continue which, on objection being made, the court refused to permit.

Under the circumstances the right of the appellant to a second argument, whether it be termed a continuation of the opening or a closing argument, rested within the sound discretion of the trial court. *Conrad v. Cleveland, etc., R. Co.* (1904), 34 Ind. App. 133, 72 N. E. 489; *The Pittsburgh, Cincinnati and St. Louis Railway Company* v. *Martin* (1882), 82 Ind. 476; *Priddy* v. *Dodd* (1853), 4 Ind. 84. As was said in the Conrad case:

> "It is certainly important, in the due administration of justice, that parties be not deprived of the full benefit of counsel in the presentation of their cause of action to the jury; nor do we think there is any absolute right in a defendant, by his failure to argue his case, to produce such a result. Every court is bound, in fairness, to prevent such abuses; but, inasmuch as our Civil Code does not take away the discretionary power of the trial court, and he chooses to exercise that discretion, we think that this court should not interfere except in extreme cases. There is nothing in the record to show that there was anything to prevent the opening from being made as complete as possible. There is nothing except speculation to indicate that the conclusion of the jury, under any argument, would have been different."

The last sentence quoted above is particularly applicable to the present case as the appellant has not chosen to include the appellees' evidence in the record she presents to us. The opening argument of her counsel appears in the record by way of a special bill. We

have read it in full and are of the opinion that it made a strong case for recovery and it went to the jury unanswered. We see nothing in the situation that would warrant us in interfering with the court's exercise of its discretion in denying further argument.

This appeal is unusual in that it makes no complaint of instructions given or refused. No questions are presented on the admission or exclusion of evidence. It isn't claimed that the verdict of the jury is not sustained by sufficient evidence or contrary to law as the term is used in the statute pertaining to new trials. The sole contention is that the verdict is the outcome of an unfair trial brought about by the conduct of the court and opposing counsel which was prejudicial to the appellant's case. Her counsel enjoys the reputation of being unusually competent in the trial of law suits and his failure to protect his client against conduct which he considered improper and which he now ingeniously characterizes as errors of law from which he need not seek relief prior to a motion for a new trial, must be attributed to trial tactics which proved ineffectual. The result is we have no record that justifies reversal.

Judgment affirmed.

NOTE.—Reported in 103 N. E. 2d 920.

DISSENTING OPINION

MARTIN, J.—I cannot agree with the majority opinion in this case.

The plaintiff had only one medical expert witness to prove that the defendants were guilty of negligence. He was a young ex-Army doctor, formerly of Gary but practicing at Manito, Illinois, at the time of trial.

The witness in question was Doctor Fremont who was born in Austria, graduated from the University of Vienna Medical School in 1936, came to the United States in 1938, immediately applied for citizenship and became a citizen as soon as the five years expired in 1943. He served his year of internship at the American Hospital in Chicago in 1939 and then was resident physician at Methodist Hospital in Gary for a year and a half, 1941-1942. He was then resident physician in St. Louis and in Geneva, Illinois, in 1942-1943.

He obtained his medical license in Illinois in 1943 as soon as he became a citizen. Shortly afterward, in the spring of 1944, he became a lieutenant in the Army Medical Corps, was promoted to captain, served in army hospitals in the United States and ten months in the large hospital at Iwo Jima, near Japan.

While he was resident physician at Methodist Hospital in Gary he had not yet obtained a physician's license from the State of Indiana because he had not yet obtained his citizenship. But he had already served his internship in Chicago, and he assisted the physicians and surgeons of Gary generally in their medical and surgical work in the Methodist Hospital, including thyroid gland operations such as is involved in this case.

Though not in Gary during 1945-1947 when this malpractice was committed, he testified that he had become familiar with the standards of medical care and skill in that community in 1941-1942 while working with the Gary physicians and surgeons as resident physician at Methodist Hospital, that when he returned from the Army in 1946 he found the medical practice and standards to be the same in this general vicinity as they had been while he had been in Gary. In the latter respect, he was fully corroborated by the admission of defend-

ant Adolph Goldstone who testified that the standards of medical and surgical care and skill in Gary in 1945-1947 at the time of this malpractice were substantially the same and at least as high as they had been during 1941-1942 while Dr. Fremont was in Gary.

Dr. Fremont testified in positive terms at the time of trial that he was then familiar with the average degree of care and skill commonly exercised by members of the medical profession in Gary and similar communities during 1945-1947, which is all that is required to qualify a medical expert to testify in a malpractice case.

The court let the plaintiff's case go to the jury on Dr. Fremont's testimony, but damaged it irreparably in the eyes of the jury before it went to them. The damage to plaintiff's case, and the error here complained of, is that in the same breath in which the court ruled he was qualified to testify, the court made gratuitous comments in the presence of the jury disparaging his qualifications as an expert and the weight of the expert opinions he was about to express.

The remarks of the court complained of are as follows:

"The Court. I am going to overrule the objection on the theory that the witness has stated his degree of knowledge which would make it appear is of some value, and let the jury determine what the testimony is worth, although I think that the better rule may be that this type of a witness should be a member of the profession in all respects at the time he gained knowledge to which he testified."

The damaging character of the court's remarks is apparent from its context. Immediately after this disparagement, and under the cloud of it, plaintiff was obliged to start offering the opinions of this expert to the jury. He was discredited before he started.

It is my opinion that the remarks of the court were prejudicial and reversible error.

64 C. J., Trial, §104, p. 100, provides as follows:

"The judge presiding at the trial of an action should abstain from any remark or comment, in the presence and hearing of the jury, which tends to discredit or disparage any witness or evidence. . . ."

64 C. J., Trial, §102, pp. 98, 99, provides as follows:

"It is improper for the judge presiding at a trial to indicate, by any comment or remark made in the presence and hearing of the jury, his opinion as to the weight or sufficiency of any evidence in the case, or as to what has or has not been established, or the extent of the damages for which recovery is sought, or to state that particular facts have been proved, where they are in dispute, or that there is no evidence in support of a contention, where evidence has in fact been introduced. . . ."

In the case of *Kintner* v. *The State, ex rel. Ripperdan* (1873) 45 Ind. 175, the court said:

"The question whether the witness was worthy of credit or not was a question for the jury, and the defendant was entitled to have that question go to them without the remarks from the court disparaging or destroying the force to be given to his testimony and showing that in the opinion of the court the witness had committed perjury. Had the court made use of the remarks in question in a formal instruction to the jury, no one could doubt, we think, as to its impropriety. We think it was equally improper for the court to make the remark when and in the manner made."

While in the above case the court was commenting on the credibility of a lay witness, comments by the court disparaging the qualification of an expert wit-

ness and the weight of his expert opinion is equally damaging to a plaintiff's case.

In the case of *Muncie Pulp Co.* v. *Keesling* (1906), 166 Ind. 479, 488, 489, 76 N. E. 1002, the court said:

". . . And the court instructs you that when witnesses are otherwise equally credible and their testimony otherwise entitled to. equal weight, greater weight and credit should be given to those whose means of information were superior and also to those who swear affirmatively to a fact rather than to those who swear negatively or to a want of knowledge or recollection.

"Appellant's counsel assail this instruction, and insist that the giving thereof to the jury constituted reversible error. In this contention we concur. An instruction identically the same as that portion of the one in question which we have embraced in italics was condemned by this court and held to constitute reversible error in *Jones* v. *Casler* (1894), 139 Ind. 382, 38 N. E. 812, 47 Am. St. 274. The question relative to the weight of the evidence was one wholly for the determination of the jury. That the trial court in giving the charge in controversy clearly invaded the province of the jury and therefore erred is settled beyond controversy, not only by the holding in *Jones* v. *Casler, supra,* but by the following cases: *Blizzard* v. *Applegate* (1878), 61 Ind. 368; *Fulwider* v. *Ingels* (1882), 72 Ind. 414; *Shorb* v. *Kinzie* (1885), 100 Ind. 429; *Cline* v. *Lindsey* (1887), 110 Ind. 337, 11 N. E. 441; *Durham* v. *Smith* (1889), 120 Ind. 463, 22 N. E. 333; *Newman* v. *Hazelrigg* (1884), 96 Ind. 73; *Finch* v. *Bergins* (1883), 89 Ind. 360; *Lewis* v. *Christie* (1885), 99 Ind. 377; *Billings* v. *State* (1886), 107 Ind. 54, 6 N. E. 914, 7 N. E. 763; 57 Am. Rep. 77; *Indianapolis St. R. Co.* v. *Taylor* (1905), 164 Ind. 155, 72 N. E. 1045; and cases there cited."

An attempted disavowal by the judge of his own prior remarks simply leaves the jury in a quandary and free to infer that the judge was stating his true views the first time. In the case of *Potter* v. *State* (Georgia, 1903), 117 Ga. 693, 45 S. E. 37, 38, 39, the court said:

·"There is connected with the court no one of higher authority to bestow upon the judge the frown of disapproval or to caution the jury not to allow his improper conduct to influence them."

In the case of *Kluge* v. *Northern Pac. Ry. Co.* (Wash. 1932), 167 Wash. 294, 9 P. 2d 74, 77, 78, the court said:

"The matter of the relations existing between court, jury, and counsel for the respective parties is one of great delicacy. The balance is very easily upset, and the matter of readjustment is one of great difficulty. In our opinion, the remarks of the court were erroneous and prejudicial to appellant. . . . we deem the general instruction, above referred to, wholly insufficient to overcome the erroneous impression which it must be held the jury received from the statements made by the court. . . . In the case of *State* v. *Jackson, supra,* this court, speaking through Chadwick, J., said: 'Every lawyer who has ever tried a case, and every judge who has ever presided at a trial, knows that jurors are inclined to regard the lawyers engaged in the trial as partisans, and are quick to attend an interruption by the judge, to which they may attach an importance and a meaning in no way intended. It is the working of human nature of which all men who have had any experience in the trial of cases may take notice. Between the contrary winds of advocacy a juror would not be a man if he did not, in some of the distractions of mind which attend a hard-fought and doubtful case, grasp the words and manner of the judge as a guide to lead him out of his perplexity.' "

In the case of *Kintner* v. *The State, ex rel. Ripperdan, supra,* the judge made disparaging remarks regarding the weight of a witness' testimony in the presence of the jury and then at the close of the trial attempted to cure the error by instructing the jury as follows:

"Now it is for you to determine what the evidence shows in this case."

But the Supreme Court held that the error was prejudicial and reversible, notwithstanding this instruction of the court at the close of the case. Likewise, in the above Kintner case, the procedure was identical with that adopted here. Immediately after the court's prejudicial remarks appellant's counsel in that case said: "To that remark we except," as did appellant's counsel in the present case. In the Kintner case the appellant moved for a new trial under the same clause of the statute which appellant used in the present case, namely, "Irregularity in the proceedings of the court . . . by which the party was prevented from having a fair trial," and the Supreme Court held this was the proper method of raising the question. I am of the opinion that the trial court erred in overruling appellant's motion for a new trial.

This case should be reversed.

NOTE.—Reported in 103 N. E. 2d 920.