ARTHUR P. PIERCE v. PATRICK BRENNAN and Others.[1]

December 12, 1902.

Nos. 13,178—(130).

Death by Wrongful Act—Negligence—Evidence.

In an action for damages, based upon the death of plaintiff's intestate by the negligent operation of a railroad construction train, the issue as tendered by the answer and made by the pleadings was that the decedent's direct employer was an employee of appellants, who operated the train, and consequently that the deceased was a fellow servant of

1 Reported in 92 N. W. 507.

the trainmen. *Held* that, under the pleadings, evidence was inadmissible which was offered to show that in fact the train was not under the control of or operated by appellants. *Held*, further, that it was not error during the course of the trial to refuse an amendment to the answer setting forth such facts. *Held*, the evidence was sufficient to support the verdict, and that there was no error in certain other rulings of the court.

Action in the district court for Ramsey county by plaintiff, as administrator of the estate of John J. Sharp, deceased, to recover $5,000 for the death of decedent. The action was dismissed as to all defendants except Archibald Guthrie, and others, co-partners as A. Guthrie & Co. The case was tried before Otis, J., and a jury, which rendered a verdict in favor of plaintiff for $1,500. From an order denying a motion for a new trial, defendants Guthrie and his partners appealed. Affirmed.

*Harris Richardson,* for appellants.

*Albert Johnson* and *A. T. Ankeny,* for respondent.

LEWIS, J.

The complaint alleged that the defendants, the Great Northern Railway Company, the Eastern Railway Company, and A. Guthrie & Co. were engaged in the construction of a line of railway known as the "Fosston Extension," and that the defendants P. Brennan & Son were independent contractors for the laying of the track on such line; that Brennan & Son agreed to lay the track at a stipulated price, and to furnish the labor required therefor, and that the other defendants were to furnish all the material for such track as it should be laid and as would be required, and transport the same, together with Brennan & Son and their laborers, from the place of operation to the boarding camps along the line; that plaintiff's intestate, John J. Sharp, was an employee of Brennan & Son, engaged in laying the track, and that during the construction of the railroad the railway companies and Guthrie & Co. provided and operated a construction train, composed of a locomotive and tender and several flat and box cars, for the purpose of carrying from point to point along the line all materials that should be required, and that such construction train was also used for the purpose of transporting the men back and forth between their

boarding camp and place of work; that on a certain day, about noon, work was suspended for the day, and the construction train was returning to the boarding camp with the men, including Sharp. The train was derailed by coming in contact with an obstruction upon the track, consisting of dump-car ties, which had been laid between and along the rails to effect an easy means of crossing; and that defendants were guilty of negligence in running their train at a rapid rate of speed without due inspection or keeping a proper lookout.

All of the defendants answered jointly, and alleged that at the time mentioned in the complaint Brennan & Son were engaged by defendants A. Guthrie &. Co. in the capacity of superintending and overseeing the laying of the track, and that they were not independent contractors, and alleged that plaintiff's intestate was employed by Brennan & Son, the agent of Guthrie & Co., and that the train referred to was an appliance used by Guthrie & Co. for the general object and purpose of completing the work of construction, and that all on the train were in their service, and co-workers and servants with the defendants Brennan & Son, and with plaintiff's intestate.

During the course of the trial it appeared conclusively from the evidence that the Great Northern Railway Company had no interest in the controversy; that Guthrie & Co. had taken a contract from the Eastern Railway Company for the construction of the entire extension of the railroad, and that Brennan & Son had an independent contract for the laying of the track, which included ties and rails; whereupon the action brought was dismissed as to all of the defendants except Guthrie & Co. A verdict was recovered by plaintiff, and defendants appealed from an order denying a motion for a new trial.

In the course of trial appellants offered evidence tending to show that the construction train was under the control of, and its operation directed by, one Quinn, the foreman of Brennan & Son, and that the train was not being operated by Guthrie & Co. at the time of the accident; most of which was objected to, and refused by the court upon the ground that it was inadmissible under the pleadings. In this, we think, the court was correct. By their

answer appellants presented squarely the issue that Brennan & Son were not independent contractors, but were employees of Guthrie & Co., who operated and controlled the construction train. They were bound by their answer, and evidence offered by them to the contrary was properly rejected. There was some evidence in the case tending to show that Quinn, to some extent, directed the movements of the train, but there is nothing to indicate that it was the intention of Brennan & Son to assume the responsibility of the management and control of the train in its actual operation. Such duty rested upon the conductor, engineer, fireman, and brakeman; and the fact that Brennan & Son had the privilege of directing when and how the train should be made up with reference to cars, when it should leave and when return to the various points of operation, and the fact that Quinn usually took a position where he could signal to the engineer or conductor in respect to the movements of the train, did not change the legal status of the parties, and place upon Brennan & Son the responsibility of operating the train. Evidence tending to show that appellants were not in fact operating the train having been refused, their counsel moved for permission to amend the answer to state the facts as they claim them to be, viz., that, although in the inception, Brennan & Son were independent contractors, and the train was furnished and operated by Guthrie & Co., yet in fact, in the peculiar conduct of the work, the train and the crew operating it were turned over to Brennan & Son, who assumed the actual management and responsibility of running and operating it. This was an entire shifting of appellant's position, and, coming in the midst of the trial, no error was committed in refusing the amendment.

The next proposition we have to consider is whether the evidence tended to show appellants guilty of negligence in operating the train. The same question, practically, was before this court on very similar evidence in the case of Mathews v. Great Northern Ry. Co., 81 Minn. 363, 84 N. W. 101.

The evidence in the present case is quite conclusive that the accident was caused by dump-car ties that had been placed between the rails to effect a crossing. There was evidence tending

to show that in grading the railroad a highway had been constructed, and that the traffic along this highway had been diverted some three hundred or four hundred feet to one side, where it could cross the track nearly upon grade. The graders had used dump cars, and had left the ties used by them in the vicinity of the place where the crossing was made, and, some one desiring to make an easier passage across the rails, had placed several of these ties between the tracks. The train was backing up at the time of the accident, and running at about twelve miles an hour. The conductor and Quinn both saw what they took to be something projecting up from the track, but the train was so close upon it when discovered that they did not succeed in signaling the engineer, and the derailment occurred at the point where this supposed obstruction was seen. In making up the train it was necessary to place cars both in the rear and in front of the engine, and in operating it was necessary to back the train in returning from the place of work; therefore it was the duty of those operating it to exercise ordinary care to see that the track was free from obstructions, especially so when going at such rate of speed, and with the engineer and fireman in a position where they could not look ahead, but were dependent upon receiving signals from the conductor and brakeman. Under all these circumstances it was for the jury to determine whether or not appellants exercised ordinary care, taking into consideration the highway, the crossing, the presence of the dump-car ties, and the time they were placed on the track.

In opening the case to the jury, counsel for respondent made a statement to the effect that the cause had been tried once before, and that the attorneys were familiar with the law and evidence; that the other trial resulted in a verdict for respondent, but, through some misconduct of one of the jurors, a new trial was granted. Exception was taken by appellants, who assigned the same as error. We are unable to see in what manner the jury were prejudiced by such a statement. Perhaps it was not commendable to refer to the former trial, but, in view of the fact that the court cautioned the jury to consider only the evidence in the case, we cannot see how it became prejudicial.

Error is also assigned for permitting certain witnesses to testify that they had examined certain flat cars in the yards of the Great Northern Railway Company in St. Paul with a view to determining the credibility of a witness who had testified that on the morning of the accident, when the train was running out, he was sitting upon the side of a flat car, with his feet hanging over, and, feeling a jar near the place of the accident, he looked over, and saw dump-car ties along, by, and between the rails. It was claimed that no sufficient foundation was laid for the reception of this class of evidence. It may be true that no great credit should be given to the result of such experiments, but it appears that the witnesses in question gave the number of the cars they had experimented with, and that appellants and their witnesses examined the same cars, and made similar tests, and testified directly to the contrary. Under these circumstances it was not error to submit the whole matter to the jury for what it was worth. Appellants had full opportunity to meet the testimony, and we think the matter was sufficiently guarded by the court.

The ruling of the court was correct in refusing to direct the jury to find specially whether Quinn, or any of the trainmen, was guilty of negligence for the reason that the trainmen were not, under the issues before the court, co-employees or fellow servants of respondent's intestate, and for the reason stated the evidence was not sufficient to justify a holding that Quinn was operating the train, even if that issue had been before the court.

It is unnecessary to refer to the other assignments.

Order affirmed.