[No. 23368. *En Banc.* March 22, 1932.]

LILIAN V. KLUGE, *as Administratrix, Respondent,* v.
NORTHERN PACIFIC RAILWAY COMPANY *et al.,*
*Appellants.*[1]

*L. B. daPonte, Thos. H. Maguire,* and *J. W. Quick,*
for appellants.

*Baldrey & Kenyon,* for respondent.

BEALS, J.—Plaintiff, as administratrix of the estate
of Herman F. Kluge, her deceased husband, brought
this action against Northern Pacific Railway Company,
a corporation, and Arie Marion, one of its engineers,
and another railroad company and one of its engi-

[1]Reported in 9 P. (2d) 74.

neers, for the purpose of recovering damages for the death of her husband, who was killed in a collision between a gasoline motor car operated by defendant Northern Pacific Railway Company, at the time in charge of defendant Marion, as its engineer, and an automobile driven by plaintiff's intestate. Prior to the trial, the action was dismissed as to the other railroad company and its engineer, the cause continuing against Northern Pacific Railway Company and Mr. Marion as sole defendants.

Plaintiff alleged facts which she contended showed that the accident which resulted in the death of her husband was caused by the negligence of defendant Northern Pacific Railway Company and its engineer. Defendants pleaded contributory negligence on the part of Doctor Kluge. The case was tried to a jury, which returned a verdict in plaintiff's favor, and from a judgment on this verdict, defendants appeal.

The Northern Pacific Railway Company will be hereinafter referred to as though it were the sole appellant.

In the first place, appellant complains of rulings of the trial court overruling its challenge to the legal sufficiency of respondent's evidence and its motion for a nonsuit interposed at the close of respondent's case, and upon the denial of its motion for a directed verdict, made after both sides had rested. A brief statement of the facts is necessary to a proper understanding of the questions presented by these assignments of error.

Carolina street, in the city of Bellingham, runs east and west, and is crossed at right angles by Humboldt street. The street intersection is crossed by railroad tracks running northwesterly-southeasterly, at an angle of about sixty-five degrees to Carolina street. Appellant's main line constitutes the easterly track,

paralleled by a transfer track about sixteen feet to the west, the main line of the Chicago-Milwaukee railroad paralleling the other tracks at a distance of about sixty feet to the west.

On the day of the accident, Doctor Kluge, on his way home for luncheon, was proceeding easterly along Carolina street. As he reached the railroad tracks, a Milwaukee freight train, consisting of eighteen cars, was moving in a northerly direction over the intersection, and Doctor Kluge stopped or slowed down to await the passing of the train. As to whether Doctor Kluge stopped or merely checked the speed of his car, the testimony is in dispute. In any event, after the train passed, the doctor proceeded to cross the railroad tracks, whereupon a collision occurred between his automobile and a Northern Pacific gas car, which was moving south on the main line track. As a result of the collision, Doctor Kluge received injuries which resulted in his death.

Testimony was introduced to the effect that there were three or four box cars standing on the transfer track to the north of the intersection, which might, to some extent, have obscured Doctor Kluge's view of the approaching gas car. The exact position of the standing freight cars with reference to the intersection is in dispute, but it is clear that some cars were standing on the transfer track just north of the intersection. Testimony was introduced to the effect that the bell on appellant's gas car was ringing, and that the crossing whistle was also blown. Several of respondent's witnesses testified that they did not hear any whistle. The Milwaukee freight train, which passed just prior to the accident, made the usual noise which accompanies a moving train.

Appellant argues that it should be held, as matter of law, that Doctor Kluge, in proceeding across the

track immediately after the Milwaukee train had passed, was guilty of contributory negligence in not seeing or hearing the approach of appellant's gas car. Appellant introduced a series of photographs, and its witnesses testified concerning measurements which they had taken, showing the area of visibility open to Doctor Kluge from different points, assuming the box cars, which were standing on the transfer tracks, to have been in the position contended for by respondent.

This evidence was properly submitted to the jury, but we cannot hold that, as matter of law, the same requires a decision that the deceased was guilty of contributory negligence. We are satisfied that this question was, by the trial court, properly submitted to the jury, and that the court did not err in overruling the different motions above referred to, interposed by appellant. In this connection, appellant cites several decisions of this court, which we have examined, but we find no authority which we deem controlling in appellant's favor upon the question now under discussion.

Appellant complains of remarks made by the trial court in the presence of the jury during the course of the trial, and contends that these remarks constitute reversible error, entitling appellant to a new trial. Respondent called as witnesses on her behalf three young boys, who testified that, at the time of the accident, they were standing on the northerly sidewalk of Carolina street, about four feet east of the Milwaukee track, where they awaited the passing of the Milwaukee freight train. These boys testified that they saw Doctor Kluge's car standing on the other side of the moving freight, waiting to cross the tracks. They also testified that, before the freight train reached the crossing, they saw the doctor approaching at a distance of about a block.

The testimony of the boys as to just how they saw, through the moving train, the doctor's car standing on the other side of the track, was somewhat confused. The case had been tried once previously to the trial which resulted in the judgment here appealed from, and it seems that the testimony of the boys as given at the two trials differed in some particulars. One of the boys testified that he had, for some reason, stooped down and had looked under the cars, at which time he saw the doctor's automobile. Another boy stated that he saw the doctor by looking between the cars as the train passed.

Appellant's witnesses testified that, from the position where the boys were standing, the doctor's car could not have been seen between the cars composing the moving train, and that it would have been matter of difficulty to have seen the automobile by looking underneath the freight cars. During the testimony of a witness, called on behalf of appellant for the purpose of testifying that it was a physical impossibility for one standing in the position of the boys to look between the ends of moving cars and see an automobile standing in the position which the boys testified Doctor Kluge's car was occupying, certain questions were propounded to the witness by appellant's counsel as to the height of the floor of a box car above the track, whereupon the following occurred:

"By THE COURT: Q. Is it three feet ten inches up to the floor of the car? A. From the top of the rail. That is the average. All cars are not the same. Q. How does a flat car and box car compare? A. They are the same. THE COURT: You gentlemen stipulated here there were about fifteen cars in that train. I don't think you ever said about the character though. It might become material. I don't know. MR. MAGUIRE: They all said they looked under, so the question that they looked over doesn't seem to enter into it. THE

Court: The question I had was whether or not it could be seen from where they were, whether it was over or under. Mr. Maguire: They testified very explicitly as to that. The Court: They did, but the question: Is it a physical fact whether they could see or not? Mr. Maguire: They have already committed themselves, and said they saw. The Court: A man might think one way, when it was the other way. I want to know the physical facts, if you can bring them out. You seem to be putting stress on that particular proposition. Mr. Kenyon: We can have Mr. Gillim bring down their train list. Mr. Maguire: I think we should have these boys testify definitely, then, whether they looked over the top of any flat cars. The Court: I don't care if you get them back. Mr. Maguire: If they didn't look over the top of any flat cars, and say they didn't, then there are no particular facts to put before the jury. The Court: I don't agree with you on that. They might have thought they looked under, or might have thought they looked between, but the feature is: could they have seen, necessarily. What is the use of speculating on the proposition if you can show the fact? Mr. Maguire: It certainly is an unfair method, producing testimony to show that these boys, who have testified definitely that they stooped over and looked underneath—another one said he saw by looking between the box cars—I submit it is unfair to offer counsel opportunity to argue against the explicit testimony of his own witness. I want those boys to come down and testify definitely how they saw it. The Court: If you want them here, all right. I have my ideas how to try a lawsuit, and somebody else's interpretation wouldn't cut much figure with the court if I saw the situation and found that some were mistaken one way or another, and some were right. I don't care what you do in that behalf, but this thing suggested itself to me several times since you gentlemen have got the matter down to this question of whether looking between box cars or underneath box cars, or how. I am not insisting upon the proposition. When I try a case, myself, I will go out and try to get every one of the facts. Mr. Maguire: Understand, I am not trying to hide any of the facts from the court

or jury in this case. THE COURT: No. I try to see the scene, whatever it is, make it a business to go out and look over whatever it is, and afterwards I determine, and if I find a bunch of witnesses have been mistaken, I will say so, and why not? Now, somebody is mistaken here, and we have got to assume when they are. mistaken one way or another, they are honest about it, and if we can find the fact and reconcile the testimony, we ought to do it."

After the last remark of the court, above quoted, appellant's counsel proceeded with the examination of the witness without further comment upon the court's statements. The next day, the record shows the following proceedings, in the absence of the jury:

"MR. MAGUIRE: There is another matter that I wish to raise at this time. In the presence of counsel, I would ask that the record show an exception to Your Honor's remarks in connection with Your Honor's suggestion made yesterday afternoon that the consist of the Milwaukee train be placed in evidence. The particular remarks that I refer to were made by the court in colloquy with counsel for the defendants, wherein the court remarked in substance that, even though the witnesses Joe Provost, William Sweeney, and Lee or Leonard Duvall testified positively that they only saw Dr. Kluge's car come to a stop underneath or between the ends of the box cars, that, nevertheless, the make-up of the train might be submitted to the jury for them to determine whether these boys might have been mistaken in the manner in which they saw, or the means by which they saw Dr. Kluge's automobile. This exception, I will say, is based upon the fact that I submit that it is a comment upon the weight of the evidence, and upon the evidence itself, and, of course, outside the province of the court. THE COURT: If you wanted to make any exception, then was the time to do it, and I would have instructed the jury to disregard it. I am going to instruct the jury in writing to disregard any statement that the court may have made in the trial of the case, and also any statements that counsel may make not sustained by the

evidence. I don't think you have any right now. I don't admit your statement this morning is fair. I am going to try to try this lawsuit right, and I am going to put you boys through right along the lines I think are proper, with all courtesy to both of you. Mr. Maguire: It is understood, in making this exception, I am only protecting the rights of my clients, and I am not making the exception for the purpose of insinuating that Your Honor intentionally has been unfair in the case. The Court: I think the time to except to it was right there. The record shows your exception.''

It appears that the parties had agreed that the Milwaukee freight train was made up of about fifteen cars, respondent not having made any attempt to show more definitely the consist of the train.

The court, at the close of the evidence, instructed the jury generally that they should disregard any and all statements made by counsel during the course of the trial where such statements were not warranted by the evidence, and that they should ''also disregard any and all statements that the court may have made in passing upon propositions of law in the trial of the case.'' The usual instructions that the burden rested upon respondent to prove, by a fair preponderance of the evidence, the negligence of appellant, and that the jury were the sole judges of the facts, were also given.

Respondent contends that the exception taken by appellant's counsel to the remarks of the court came too late, and that appellant should have excepted thereto at once, if the action of the court was deemed objectionable, so that the court could have taken immediate steps to correct any erroneous impression which the jury might have received from the court's remarks.

The matter of the relations existing between court, jury and counsel for the respective parties is one of great delicacy. The balance is very easily upset, and the matter of readjustment is one of great difficulty.

In our opinion, the remarks of the court were erroneous and prejudicial to appellant.

The question of whether or not appellant's exception to the remarks of the court was seasonably taken, must be decided upon the particular circumstances in this case. It does not appear that, by the delay in presenting the exception, respondent's rights were in any way prejudiced. Had the court in its instructions to the jury covered the matter by some particular instruction, as we understand from the court's statement that it contemplated doing, a different situation would be presented, as to which we express no opinion.

An instruction to disregard the court's remarks, given immediately after the matter was called to the court's attention, would possibly have been as effective as one given immediately after the occurrence, but the jury were not so instructed at any time, and we deem the general instruction, above referred to, wholly insufficient to overcome the erroneous impression which it must be held the jury received from the statements made by the court. The opinions of this court in the cases of *State v. Jackson,* 83 Wash. 514, 145 Pac. 470, and *Eckhart v. Peterson,* 94 Wash. 379, 162 Pac. 551, are decidedly in point upon the several phases of the matter here under discussion. In the case of *State v. Jackson, supra,* this court, speaking through Chadwick, J., said:

"Every lawyer who has ever tried a case, and every judge who has ever presided at a trial, knows that jurors are inclined to regard the lawyers engaged in the trial as partisans, and are quick to attend an interruption by the judge, to which they may attach an importance and a meaning in no way intended. It is the working of human nature of which all men who have had any experience in the trial of cases may take notice. Between the contrary winds of advocacy, a juror would not be a man if he did not, in some of

the distractions of mind which attend a hard fought and doubtful case, grasp the words and manner of the judge as a guide to lead him out of his perplexity. On the other hand, a presiding judge has no way to measure the effect of his interruption. The very fact that he takes a witness away from the attorney for examination may, in the tense atmosphere of the trial, lead to great prejudice.''

In the course of his remarks, the trial court called attention to the fact that appellant's counsel appeared to be stressing some particular phase of the evidence, and, in reply to some argument on the part of counsel, stated that he disagreed with counsel, and that speculation should not be indulged in if the fact could be shown. The court remarked that the witnesses might have thought that they had seen the doctor's car by one method or by another, and continued by stating that, if appellant wanted to recall the witnesses, it was all right, but that the court had its own ideas as to how a lawsuit should be tried, continuing, ''When I try a case myself, I will go out and try to get every one of the facts.''

This clearly conveyed to those present the impression that, in the opinion of the court, the case on trial was not being conducted in accordance with the ideas of the trial judge as to the proper method of trying a case to a jury, and the impression given is clearly reflected by the immediate answer of appellant's counsel. The concluding remarks of the trial court are equally objectionable, and the entire incident can only have resulted in serious prejudice to appellant.

We are in hearty accord with the principle that a trial judge is more than a mere arbitrator or referee, and that the trial court may properly see to it that the trial is conducted in an orderly manner, and that the court's control of the situation should be manifest

and complete at all times. It is equally true, however, that a trial court should exercise the greatest care in discussing, in the presence of the jury, questions concerning the evidence. The remarks above quoted were not the result of objections by either party, or of any request for a ruling by the court on any question of law, in either of which cases some latitude must necessarily be allowed, but were volunteered by the court on its own motion. The court can always, with entire safety, in so far as possible influence of the jury is concerned, give counsel for both sides the benefit of its advice, or give positive directions, in the absence of the jury, and can otherwise control any situation which may present itself, to the end that justice may prevail, as nearly as is possible in human affairs.

A careful examination of the record before us convinces us that the remarks of the trial court, above quoted, made in the presence of the jury, were uncalled for and improper, and that the same constituted a comment upon the evidence within the prohibition of the constitution. Because of this erroneous action on the part of the trial court, the judgment appealed from must be reversed.

Other questions are presented by appellant, but, in view of our opinion that a new trial must be granted, we deem further discussion of the case unnecessary.

Judgment reversed, with directions to grant a new trial.

TOLMAN, C. J., MITCHELL, PARKER, MAIN, BEELER, HERMAN, and MILLARD, JJ., concur.

HOLCOMB, J. (concurring in result)—I concur in the result reached, but not in much that is said in the prevailing opinion.