[No. 24177. *En Banc.* February 28, 1933.]

ROBERT G. WISEMAN, *Respondent,* v. SKAGIT COUNTY DAIRYMEN'S ASSOCIATION *et al., Appellants.*[1]

*Bogle, Bogle & Gates, Sidney A. Moss, Ray Dumett, Thomas Smith,* and *James G. Smith,* for appellants.

*C. J. Henderson* and *Alfred McBee,* for respondent.

TOLMAN, J.—This cause was once before in this court, and was then reversed because of prejudicial error in instructing the jury. *Wiseman v. Skagit County Dairymen's Association,* 166 Wash. 57, 6 P. (2d) 369. Reference is made to the former decision for full information regarding the issues and the principal facts and circumstances involved.

In the first trial, the plaintiff obtained a verdict

[1]Reported in 19 P. (2d) 662.

in his favor for $10,335.85, and in the second and last trial a like verdict in the sum of $11,015.85 was returned. The defendant has appealed from a judgment entered on the verdict. Other facts necessary for an understanding of the claims of error now advanced will be stated in proper order as we proceed.

The first assignment of error is based upon what is claimed to be prejudicial misconduct of counsel in examining jurors on *voir dire*. In the process of selecting a jury, counsel for the respondent examining, the following occurred:

"Q. Did you ever know that this case was tried once before in this court? A. I did today at noon. Q. Do you know the amount of the verdict that was rendered in favor of the plaintiff in this case? Mr. Moss: I object, and I ask that the entire jury panel be discharged. That is prejudicial. The Court: Objection sustained, and the jury will be instructed to disregard that statement. The motion for a jury panel to be discharged will be denied. Mr. Moss: Exception. Q. Should it develop during the trial of this case, and you should find out as to in whose favor a verdict was rendered in this case, or in what amount a verdict was rendered in this case, would that cause you to be prejudiced for or against either of the parties, or would that limit you in the amount of a verdict that you would bring in for the plaintiff? Mr. Moss: I object as misconduct of counsel and prejudicial to the interests of the defendant, and I again move that the jury panel be discharged. The Court: Objection overruled. Mr. Moss: Exception."

The prejudicial features contained in the questions propounded are claimed to be twofold, namely, the giving of direct information to the jurors that a verdict in favor of the plaintiff had been rendered on the first trial, and also the suggestion to the jurors that they ought not to be and should not be limited in their award by the former verdict, which perhaps carried

the implication that the plaintiff considered the first verdict inadequate.

The second ground suggested needs no extended discussion. Respondent was claiming damages in excess of twenty thousand dollars, which, of course, would be made to appear to the jury in due course, and the jury was instructed that, in arriving at its award, it must be guided by the evidence in the case. No doubt, if it had been considered necessary and a request therefor had been made, the jury would also have been instructed not to base its award upon anything done by any other jury on a former trial.

There are numerous cases holding that it is error for counsel in argument to the jury to refer to the verdict rendered on a former trial of the same case. *Chowning v. Parker,* 104 Mo. App. 674, 78 S. W. 677; *Underwriters' Fire Association v. Henry,* 79 S. W. (Tex. Civ. App.) 1072; *Springfield Consolidated Railway Co. v. Bell,* 134 Ill. App. 426; *Fisher v. Pennsylvania Co.,* 34 Pa. Superior Court 500, and many others. In most of these cases, the prejudicial statements were made in the course of final argument, but the Pennsylvania case last cited holds that "the rule is the same at whatever stage of the case the improper language is used." There are also authorities to the contrary. 4 C. J. 957; *Western Union Telegraph Co. v. Burgess,* 60 S. W. (Tex. Civ. App.) 1023; *Pierce v. Brennan,* 88 Minn. 50, 92 N. W. 507.

We will not attempt to analyze the authorities pro and con. Perhaps, in an aggravated case, where we can see some reason to believe that the jury was, in fact, prejudiced by what was said, we may feel obliged to enforce the stricter rule, but here, where the offending language was used on the *voir dire,* when the amount of the verdict was not disclosed and there was

nothing in the setting calculated to impress the matter on the minds of the jurors, and, most important of all, when the jury was promptly instructed to disregard the improper statement, we can not assume that actual prejudice occurred; the more so in that the present verdict but slightly exceeded the former one and the record reveals nothing indicating that it was based on passion or prejudice.

The next assignment of error is based upon claimed misconduct by the trial court in two particulars. While counsel for appellant was conducting the direct examination of one of his witnesses, the following occurred:

"Q. Did you see the Ford handle in the truck? Mr. HENDERSON: I object as leading and suggestive. Counsel could ask the witness what he saw and he could describe those things, without continuing to lead him all the time. Mr. Moss: It is saving time. The Court: It is a poor way to save time, but objection overruled to the question. Mr Moss: Exception to the remark, please. A. I was the one that took the handle out of the rail. The Court: I would like to know if questions are asked for the purpose of annoying the court and getting him to make statements in the presence of the jury that maybe should not be made. You took exception to my statements. If you are asking questions for that purpose I think you ought to be reprimanded. If you are not, it is all right to proceed."

And at another time, when counsel for respondent was cross-examining a witness, there took place the following:

"Q. Now at the last trial of this case you were on the witness stand testifying that you could tell by the roar of the motor the speed that the car was going, and didn't I ask you this, 'Now that is the only thing that you had to judge the speed by, of this car?' and you said, 'No.' Is that right? Mr. Moss: No, that is not the way it reads. Mr. HENDERSON: I am not going through the whole transcript. You can ask him any-

thing you want to, but leave me alone with this city stuff. I want to be left alone when I am examining this witness. MR. MOSS: I would like to ask that that remark as to my coming from outside and attempting to do things that are not proper here, be stricken from the record, and that I be protected in the eyes of the jury. MR. HENDERSON: I would like to ask counsel to quit interrupting me. THE COURT: I think if counsel will let their pettifogging alone, drop it on both sides, we will get along better in this case, and I don't want to hear anything more. Proceed.''

All men are human—even judges; and none of us has unlimited patience. The court's interjection, ''It is a poor way to save time,'' and his attitude of questioning the good faith of counsel when he took exceptions thereto, perhaps indicate strain, over-work, or the natural reaction to an accumulation of petty things and annoyances which may have theretofore occurred during the trial. No such natural and human acts, especially when they are followed by calm, cool, dispassionate, fair and adequate instructions, fully advising the jury as to its rights and duties in weighing the facts, can or should be held to be prejudicial unless some peculiar setting is shown from which prejudice is to be inferred.

The court's final remark, in which the word ''pettifogging'' was included was, we think, even less likely to cause prejudice, for a number of reasons: (a) Because it was addressed to counsel on both sides and bore on each equally; (b) because the term ''pettifogging'' was used in its popular sense rather than according to its strict definition, and could not have been otherwise understood; and (c) because it was used to characterize the acts of counsel which had been done in the presence of the jury, with the extent and character of which the jury was fully familiar, and the language used, including the obnoxious word,

meant to the jury only: Please stop doing the things which you both have been doing. We have not over-looked our language in *Kluge v. Northern Pacific Rail-way Co.*, 167 Wash. 294, 9 P. (2d) 74, to the effect that ". . . the relations existing between court, jury and counsel for the respective parties is one of great delicacy. The balance is very easily upset, and the matter of readjustment is one of great difficulty."

All that is still true, but we feel that, in this case, we cannot say that the delicate balance referred to in the *Kluge* case was upset in any degree or at all. The cases upon which appellant relies for a reversal upon this point all so differ in their facts from this case that we find them not applicable.

No prejudicial error having been committed, the judgment is affirmed.

MAIN, PARKER, MITCHELL, HOLCOMB, and BLAKE, JJ., concur.

STEINERT, J. (dissenting)—I dissent. The majority opinion contains a full, fair and complete statement of what occurred at the trial, and my conclusions are rested thereon.

As to what occurred in the selection of the jury, I am satisfied that it was prejudicial error, so far as complained of. I can see no distinction in the effect or result between a statement made at the threshold of the trial and one made in the course of final argument. If poison be injected into the body, it makes little dif-ference whether it be in the hand or the foot; and if the result be fatal, the point of inoculation becomes of no consequence. If a trial be otherwise fair, a preju-dicial statement made in the course of final argument may sometimes be wholly disregarded by a fair-mind-ed jury, but if the trial proceed from the beginning

upon a prejudiced course, it becomes difficult to right it.

As to the colloquy between court and counsel, as well as between counsel themselves, I think that their cumulative effect was also prejudicial. The record, as well as the majority opinion, is silent as to anything indicative of fault or provocation on the part of appellants' counsel; yet the burden of the court's censure fell upon him. As I interpret the probable reaction upon the jury, it presented to them the case of a lawyer from a city coming into a smaller community seeking to defeat a just claim by methods obnoxious to the court and unfair to local counsel. In a case such as this, where the natural sympathy of the jury would be inclined toward the plaintiff because of his pitiable condition, and where the defense moved against an atmosphere of bias and prejudice, for which defendants' counsel appeared to be responsible in the eyes of the jury, the result was almost inevitable. The case, I think, falls within the criticism expressed by this court in *Kluge v. Northern Pacific Railway Co.*, 167 Wash. 294, 9 P. (2d) 74, cited in the majority opinion.

While it would be regrettable that the efforts of a long trial, particularly when repeated by a second, should be lost by a reversal of the judgment, yet if the result be based on the expression of a biased or prejudiced jury, it should be held to be no judgment at all. I think that the judgment in this case follows a verdict in which is reflected the jury's prejudice, and should be reversed. I therefore dissent.

BEALS, C. J., and MILLARD, J., concur with STEINERT, J.